D. D. Kennedy, Inc., Plaintiff-Appellant, v. Lake
Petersburg Association, Defendant-Appellee.

Gen. No. 10,521.

Fourth District.
December 21, 1964.

Pfeifer, Fixmer and Gasaway, of Springfield (Frank M. Pfeifer and John P. Fixmer, of counsel), for appellant.

John E. Grosboll, of Petersburg, for appellee.

PER CURIAM.

This is an appeal by the plaintiff, D. D. Kennedy, Inc., from an Order of the Circuit Court of Menard County sustaining the motion of the defendant, Lake Petersburg Association, to strike the amended complaint, striking the same, and entering a final judgment for the defendant, the plaintiff having elected to stand on its amended complaint. The plaintiff, as a subcontractor, sought to impress a mechanic's lien upon certain real estate of the defendant in Menard County and upon any funds in the hands of the de-

fendant belonging to the general contractor concerned, one Leslie Ankrom, doing business as Ankrom Construction Company, another defendant, under the Mechanics' Liens Act, ch 82 Ill Rev Stats 1961, pars 1 ff. The only question is whether the plaintiff, under its amended complaint, is entitled to a mechanic's lien under the statute concerned.

The plaintiff's amended complaint alleges, in substance, that the defendant Lake Petersburg Association, an Illinois not for profit corporation, on July 1, 1961, prior thereto, and now, was and is the owner of certain described real estate in Menard County; the plaintiff is, and at the times hereinafter stated was, engaged in the business of selling and renting earth moving and road building equipment, apparatus, and machinery; the defendant Leslie Ankrom, doing business as Ankrom Construction Company, at the times mentioned was a general contractor, and on or about July 11, 1961 that defendant entered into a written contract with the defendant Lake Petersburg Association, the owner of the real estate concerned, by which the defendant Ankrom agreed to provide and furnish all labor, materials, necessary tools, machinery, apparatus and equipment to perform and complete the improvements of dam and spillway, clearance of reservoir area and dredging of lake inlets for and upon the real estate concerned, at certain unit prices according to the units finished, in accordance with said contract, a copy of which is made a part of the complaint as Exhibit A; in order to carry out his contract the general contractor on or about July 12, 1961 entered into a written contract with the plaintiff by which the plaintiff agreed to rent and furnish certain machinery, equipment, apparatus, and labor, namely, five Allis-Chalmers Model TS–360 Motor Scrapers, and the services of a man for two weeks to start the same, in the improvement upon the real es-

tate concerned, at the price or rental of $1,700 per month for each motor scraper, or a total monthly rental of $8,500 from delivery at the job site until returned to the plaintiff, plus transportation charges, a copy of which contract is made a part of the complaint as exhibit B; in pursuance of that contract the plaintiff furnished all the machinery, equipment, apparatus, services, and labor required by it and complied with it, the plaintiff completed the furnishing thereof on May 31, 1962 and on that day performance of that contract was completed; during the performance of that contract the plaintiff at the instance of Leslie Ankrom (the general contractor) furnished certain goods, etc., being certain repair parts used in repairing and maintaining the motor scrapers, for use in connection with the improvement of the real estate concerned, reasonably worth $776.01; the last repair parts furnished by way of extras were furnished May 21, 1962 and on that date the furnishing of such extras was completed; all of the machinery, equipment, apparatus, services, labor, and repair parts furnished by the plaintiff were delivered to and accepted for the improvement of said real estate, and the operation thereof constituted a permanent, valuable improvement thereof, and the major improvement to be performed and performed by the contractor was the construction of an earthen dam to create an artificial lake in which construction the operations of filling and excavating the earth on the real estate was the most substantial and important portion of the performance of the contract between the contractor and owner; the said filling and excavating was performed in substantial measure through use of the motor scrapers by the contractor, and as a result the useful life of such machinery after such use was greatly lessened so that such machinery was consumed in part through their use in the permanent improvement of such real estate;

the motor scrapers were used for 138 working days during construction of the improvements, ending May 31, 1962, and the reasonable value for the services of each of the five motor scrapers was $77 per day so that the total reasonable value for the services thereof was $53,130; the plaintiff has received certain payments on account,—(totalling $13,300),—on May 31, 1962 $39,830 remained due, on May 21, 1962 there became due $776.01 for the extras, the final payment was due May 31, 1962, there is now due $40,606.01, with interest from May 31, 1962, and by reason of the nonpayment thereof the plaintiff is entitled to and claims a mechanic's lien on the real estate for such; on June 16, 1962 the plaintiff delivered to the defendant, Lake Petersburg Association, the owner, a notice of claim for lien, a copy being made a part of the complaint as exhibit C, and then or subsequently the owner was indebted to the defendant Leslie Ankrom (the general contractor) in excess of that due the plaintiff by Ankrom; and on September 25, 1962 the plaintiff filed a claim for lien with the Clerk of the Circuit Court, Menard County, a copy being made a part of the complaint as exhibit D. The prayer for relief was that an accounting be had as to the amount due the plaintiff, the plaintiff be decreed entitled to a mechanic's lien on the real estate for the amount found due, a receiver be appointed for the real estate, the defendants be decreed to pay the plaintiff the amount found due, in default of payment the real estate be sold to satisfy such amount, in case of sale, and failure to redeem, the defendants etc. be barred and foreclosed of all right or equity of redemption, and for other appropriate relief.

The alleged copy of the contract of July 11, 1961 between the defendant, Leslie Ankrom, doing business as Ankrom Construction Company, the general contractor, and the defendant, Lake Petersburg Associa-

91

tion, the owner, exhibit A to the amended complaint, provided, in part, as follows:

"ARTICLE 1. SCOPE OF WORK—The CONTRACTOR shall perform everything required to be performed and shall provide and furnish all of the labor, materials, necessary tools, expendable equipment, and all of the utility and transportation services required to perform and complete the improvement of dam and spillway, clearing reservoir area, and dredging lake inlets of the OWNER, all in strict accordance with the Contract Documents hereinafter enumerated in Article V. . . ."

"ARTICLE II. THE CONTRACT PRICE—The OWNER shall pay the CONTRACTOR for the performance of this Contract, subject to any additions or deductions provided herein, the Contract price computed as follows:

"The aggregate sum of the following accepted unit items in the quantities and at the unit prices shown, it being understood that the quantities of the several items are approximate only and payments will be made on the actual measured quantities in place, at the unit prices shown, the OWNER reserving the right to increase or decrease the scope of the work within the respective items shown, the said unit prices to apply for additional or lesser quantities, including all labor, materials, and expendable equipment of every kind and nature necessary to construct, install and perform the same, complete in place sufficient for the purpose for which such item is intended and that the aggregate of all such items will constitute a complete inter-connected whole

installation sufficient in all respects to accomplish the purpose for which the same was intended as per the plans and specifications."

Following which in that alleged contract is a table of "Accepted Unit Items" for "Earth and Spillway" and a "Schedule of Prices," listing 11 items by description, quantity, unit, unit price, and extended price,—being excavation (waste), earth excavation and embankment, filter blanket, gravel cushion for rip rap, dumped rip rap, spillway, top soil, seeding and mulching, clearing and stripping dam site, clearing reservoir area, and earthwork for lengthening, widening and deepening inlets.

The alleged copy of the agreement of July 12, 1961 between the plaintiff, D. D. Kennedy, Inc., the alleged subcontractor, and the defendant, Leslie Ankrom etc., the general contractor, exhibit B to the amended complaint provided in full, as follows:

"D. D. KENNEDY, INC.
Manheim Road at Madison Street
P. O. Box 177, Bellwood, Illinois
'Chicago Headquarters for Earthmoving
and Road Building Equipment'

RENTAL AGREEMENT

Date July 12, 1961

Ankrom Construction Co.
Route 4 Jacksonville, Illinois

WE PROPOSE TO rent you the following equipment subject to terms and conditions hereinafter stated:

93

5–Used Allis-Chalmers Model TS–360 Motor Scrapers

Serial No's 1283, 1461, 1607, 1608 and 1610

Serviceman furnished for 2 weeks to start equipment.

RENTAL is to be at the rate of $1,700 per month on each unit—$2,550.00 for double shift, from date of delivery until equipment is returned to us, this period to be not less 90 days period on each unit. Rentals to start on each unit on date contractor puts in service.

TERMS:

Monthly rental payable in advance with all rentals to apply to purchase price of $12,000 each or total price of $60,000, plus interest and any applicable state tax.

DELIVERY of the equipment is to be made to you f o b Hillside, Illinois ship via Reidehs Trucking to job site Petersburg, Ill. on week of July 24, 1961.

ALL TRANSPORTATION CHARGES from point of delivery to designation and return charges to point of delivery, or equal freight or trucking distance elsewhere if so directed, are to be paid by you.

YOU ARE TO ASSUME full responsibility for equipment during rental period and are to return it to us in as good condition as received less wear incident to normal use in the hands of a competent operator.

WE AGREE to deliver equipment to you in good working order and will on request, furnish the services of a mechanic without charge to demon-

strate it and instruct your operator. After equipment has been turned over to you in good working order, all further mechanic's services are to be paid for by you at your regular rates, unless it is clearly evident that the equipment is defective.

WE ASSUME NO LIABILITY for loss or damage on account of accidents, delays due to defective material, or to motor or engine troubles, or delays in the delivery or removal of equipment. You agree to indemnify us against loss, damage, expense and penalty arising from any action on account of personal injury or damage to property occasioned by the operator, handling or transportation of this equipment during the rental period.

WE RESERVE THE RIGHT, if rental is in default under the terms of this agreement, or if in our opinion equipment is being damaged in excess of ordinary wear and tear, to take possession of our property upon 24 hours' notice.

D. D. KENNEDY, INC.<br>By: /s/ Arthur E. Briggen

ACCEPTED:

/s/ Ankrom Construction Co.
By Leslie Ankrom"

The motion of the defendant, Lake Petersburg Association, to strike the amended complaint is, in substance, to this effect: the amended complaint fails to state a cause of action; the plaintiff has no mechanic's lien under the statute concerned; plaintiff's exhibit B is a conditional sales contract and any sum the defendant Ankrom may owe the plaintiff by reason thereof is a part of the purchase price of the equipment; it fails to allege that any of the equipment,

95

apparatus, service and labor claimed to have been furnished by the plaintiff to Ankrom became installed in or became a part of any structure located on the real estate concerned; it fails to allege that any of the equipment, apparatus, service and labor claimed to have been furnished by the plaintiff to Ankrom was used up or consumed by Ankrom in or upon any structure located on the real estate concerned; and it fails to allege that any of the equipment, apparatus, service and labor claimed to have been furnished by the plaintiff to Ankrom has become the property of the Lake Petersburg Association or was ever intended to become its property.

The plaintiff urges that the Court erred in striking the amended complaint because it is not necessary that equipment, apparatus, and machinery used in filling and excavating lands become a part of such fill or excavation or of any structure on the land in order to establish a mechanic's lien, and that the Court erred in not allowing a mechanic's lien for the reasonable rental of equipment, apparatus, and machinery supplied by the subcontractor to the general contractor for the periods in which such was used actively in the construction of an improvement of the owner's land.

The defendant Lake Petersburg Association urges that the Court correctly sustained its motion to strike the amended complaint because the written instrument upon which the plaintiff's claim for lien is founded, exhibit B, is, in legal effect, a conditional sales contract, and a seller of tools, equipment and devices to a contractor to be used in construction work and which are not intended to and do not become a part of the improvement or the property of the owner, is not a subcontractor under Section 21 of the statute and the seller has no mechanic's lien for the purchase

price thereof; and if exhibit B is not, in legal effect, a conditional sales contract, but is a lease or rental agreement, the lessor of tools, equipment and devices to an original contractor to be utilized in the construction work and which are not intended to and do not become a part of the improvement or the property of the owner, is not a subcontractor under Section 21 and the lessor has no lien for the specified rental or the reasonable value of the services of such tools, equipment and devices so leased.

Section 21 of the Mechanics' Liens Act, Ch 82 Ill Rev Stats 1961, par 21, relating to subcontractors' liens relative to private improvements on private property, provides, so far as material:

"21. SUB-CONTRACTOR'S LIEN—EXTENT—OWNER'S LIABILITY—SUBCONTRACTS PERFORMED AFTER NOTICE THEREOF—IN CASE CONTRACTOR DEFAULT—MAY COMPLETE—WHEN.)—Every mechanic, workman or other person who shall furnish any materials, apparatus, machinery or fixtures, or furnish or perform services or labor for the contractor, or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work where concrete, cement or like material is used in whole or in part, shall be known under this act as a subcontractor, and shall have a lien for the value thereof, with interest on such amount from the date the same is due, from the same time, on the same property as provided for the contractor, and, also, as against the creditors and assignees, and personal and legal representatives of the contractor, on the material, fixtures, apparatus or machinery furnished, and on the mon-

eys or other consideration due or to become due from the owner under the original contract. . . ."

Under the allegations of the amended complaint is the plaintiff, D. D. Kennedy, Inc., a "subcontractor" within the meaning of Section 21? Is the plaintiff a "mechanic, workman or other person who shall furnish any materials, apparatus, machinery or fixtures, or furnish or perform services or labor for the contractor," within the meaning of Section 21? The plaintiff is alleged to be a subcontractor,—not a contractor. Whether it has, under the allegations, a lien depends basically on Section 21, not on some other Section, though other parts of the Act, including Section 1 in particular, must be examined, where the facts and circumstances require, to determine whether the party the alleged subcontractor has dealt with is a "contractor" within the meaning of the act, from what time the lien exists, if at all, and on what property the lien exists, if at all. The question here is whether the plaintiff is a "subcontractor" under, basically, Section 21, not whether the defendant Ankrom was a "contractor" under Section 1.

Although Section 21 is the particularly relevant part of the Act as to this case, certain other sections may be referred to to assist in placing the matter in context and perspective, to aid in the construction, interpretation, and meaning of Section 21, and to aid in understanding some of the cases. These other sections are Section 1 relating to contractors' liens relative to private improvements on private property, Section 7 relating, in part, to the preservation of liens for material under certain circumstances, Section 23, relating to subcontractors' liens relative to public improvements for various governmental bodies, and Section 39 relating to construction of the Act. Sections

1, in part, 7, in part, 23, in part, and 39,—Ch 82
Ill Rev Stats 1961, pars 1, 7, 23, and 39,—provide:

"1. WHEN LIEN GIVEN.) Any person who shall by
any contract or contracts, express or implied, or
partly expressed or implied, with the owner of a
lot or tract of land, or with one whom such owner
has authorized or knowingly permitted to contract
for the improvement of, or to improve the same,
furnish material, fixtures, apparatus or machin-
ery, forms or form work used in the process of
construction where cement, concrete or like ma-
terial is used for the purpose of or in the building,
altering, repairing or ornamenting any house or
other building, . . . or fill, sod or excavate such
lot or tract of land, or do landscape work thereon
or therefor; . . . or furnish material, fixtures,
apparatus, machinery, labor or services, forms or
form work used in the process of construction
where concrete, cement or like material is used,
. . . shall be known under this Act as a contrac-
tor, and shall have a lien upon the whole of such
lot or tract of land and upon adjoining or adjacent
lots or tracts of land of such owner constituting
the same premises and occupied or used in con-
nection with such lot or tract of land as a place
of residence or business; and in case the contract
relates to two or more buildings, on two or more
lots or tracts of land, upon all such lots and tracts
of land and improvements thereon for the amount
due to him for such material, fixtures, apparatus,
machinery, services or labor, and interest from
the date the same is due. . . .

"7. LIMITATION AS AGAINST THIRD PARTIES—CLAIM
FOR LIEN—ERRORS—PROOF OF DELIVERY SUFFICIENT
—SEPARATE LOTS OR BUILDINGS.) . . . nor shall any

99

such lien for material be defeated because of lack of proof that the material after the delivery thereof, actually entered into the construction of such building or improvement, although it be shown that such material was not actually used in the construction of such building or improvement; Provided, it is shown that such material was delivered either to said owner or his agent for such building or improvement, to be used in said building or improvement, or at the place where said building or improvement was being constructed, for the purpose of being used in construction or for the purpose of being employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed forms or form work where concrete, cement or like material is used, in whole or in part.

"And, provided further, that in case of the construction of a number of buildings under contract between the same parties, it shall be sufficient in order to establish such lien for material, if it be shown that such material was in good faith delivered at one of the said buildings for the purpose of being used in the construction of any one or all of such buildings, or delivered to the owner or his agent for such buildings, to be used therein; . . ."

"23. LIEN AGAINST PUBLIC FUNDS—NOTICE—PUBLIC IMPROVEMENTS—DUTY AND LIABILITY OF OFFICER—SUITS—PRO RATA PAYMENTS.) For the purpose of this section 'contractor' includes any sub-contractor. Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for any county, township, school district, city or

municipality in this State, shall have a lien on the money, bonds, or warrants due or to become due the contractor having a contract with such county, township, school district or municipality in this State under such contract: . . . .

"Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for the State, may have a lien on the money, bonds or warrants due or about to become due the contractor having a contract with the State under the contract, by filing with the Director of the Department whose duty it is to let such contract a sworn statement of the claim showing with particularity the several items and the amount claimed to be due on each; but the lien shall attach to only that portion of the money, bonds or warrants against which no voucher has been issued and delivered out of such department. . . ."

"39. CONSTRUCTION OF ACT.) This act is and shall be liberally construed as a remedial act."

Mechanic's liens are unknown to the common law, or to equity, and depend for their existence and enforcement on the statutes which create them; such statutes being in derogation of the common law are to be strictly construed: Armstrong v. Obucino (1921), 300 Ill 140, 133 NE 58. This is true notwithstanding Section 39 of the Act which provides: "This act is and shall be liberally construed as a remedial act": North Side Sash and Door Co. v. Hecht et al. (1920), 295 Ill 515, 129 NE 273. The Supreme Court has uniformly so held; mechanic's liens are purely statutory; the statute should not be extended to cases not provided for by the language of the act even though they may fall within its reason; unless the statute, un-

der the rule of strict construction, creates the lien none can be maintained; the remedy by mechanic's lien is in addition to the ordinary remedies afforded by the common law and is a privilege enjoyed by one class of the community above other classes; a party seeking to enforce such a lien must bring himself strictly within the terms of the statute: Hoier v. Kaplan (1924), 313 Ill 448, 145 NE 243.

 The mere delivery of fixtures, apparatus, and machinery by a contractor,—electric wiring, motors, accessories, plumbing, piping, etc.,—is not sufficient to authorize a decree establishing a contractor's lien under Section 1 of the Act without any proof that such fixtures, apparatus, and machinery were used in such a manner as to become attached to or form a part of the real estate; as to materials, a lien can only be established to the extent of materials actually used in the construction of the building, except as modified by the parts of Section 7 heretofore referred to; those qualifying parts of Section 7 preserving liens for material under certain circumstances do not extend to fixtures, apparatus, or machinery; where a lien is sought to be established for fixtures, apparatus, or machinery it must be alleged and proved that the things for which the lien is claimed were so attached to the building or improvement as to become a part of the real estate; whether or not machinery is within the lien law usually depends upon whether it has become a fixture: R. Haas Electric & Manufacturing Co. v. Springfield Amusement Park Co. (1908), 236 Ill 452, 86 NE 248.

 A subcontractor has no lien under Section 21 of the Act for lumber furnished the contractor which did not enter into the permanent construction of a building, and did not become a part of the building, and was not furnished for that purpose but for false work, molds, and forms into which concrete was

102

poured, the lumber afterwards being all taken away (prior to the amendments of Sections 21, 1, and 7, relating to forms or form work) ; a lien can be enforced only to the extent of materials actually used in the construction of the building, except as modified by the parts of Section 7 heretofore referred to as that section then read, but even under Section 7 the material must still have been delivered for the purpose of being used in the construction; the materials to be lienable must be used as a part of the construction so that they become a part of the completed structure, not just used in the process of construction as a means for assisting in the erection of the building (prior to the amendments relating to forms or form work) ; the lumber furnished by the subcontractor here was not destroyed by the use made of it, though depreciated in value, and it never became or was intended to become the property of the owner of the building, but belonged to the contractor who bought it, employed it in the temporary use for which he obtained it, and took it away to be used again for his own purposes: Rittenhouse & Embree Co. v. F. E. Brown & Co. (1912), 254 Ill 549, 98 NE 971.

██ ██ Subcontractors have no lien under Section 23 of the Act for furnishing the contractor having a contract for public improvements for a County certain machinery, material, tools, a traction engine, small tools, pumps, well casings, and water pipes which are not consumed in and do not become a constituent part of the construction of the improvement; a contractor's lien under Section 1 for furnishing material, fixtures, apparatus, or machinery, etc., for an improvement on private property is upon the basis that the labor or material has entered into or contributed to the production or was permanently furnished for the improvement upon which the lien is impressed, but is not given for material or machinery

which has not become and is not intended to become the property of the owner of the improvement but belongs to the contractor or subcontractor who furnished it; that an improvement is public rather than private affords no reason for holding that the machinery, equipment, and tools are to be regarded in a different manner, unless some clear wording in the statute so indicates; the lien does not extend to include the purchase price of machinery, equipment and materials the ownership of which the purchaser or contractor intends to retain; it is generally presumed that a contractor is prepared with machinery and necessary appliances to do his work, and if such items are furnished him by someone else they are furnished upon his own credit and as a part of his working equipment and business and are not furnished upon the implied credit of the public; it was not intended that the fund referred to in Section 23 be the source of indemnity to a contractor or subconstractor for his working equipment: McMillan v. Joseph P. Casey Co. (1924), 311 Ill 584, 143 NE 468.

A contractor has no lien under Section 1 of the Act for labor in furnishing temporary heat in the construction of a building during cold weather; a lien for materials can be enforced only to the extent of their actual use in the construction of the building or improvement (except to the extent of the qualification referred to in Section 7 as to the preservation of liens for material under certain circumstances, and except as to forms or form work as provided in the amended Sections 21, 1, and 7); material may be used or work performed in processes of construction which will not come within the act, unless specifically so provided,—uses in the process of construction afford no basis for a lien, unless specifically so provided in the act; the language "used in said building or improvement" and "used in construction" in Section 7

104

denote use as a part of the construction so that the material becomes a part of the completed structure; the words "used in the process of construction" in Section 7 (and the same words are used in the same way in Sections 21 and 1) are specifically limited to forms or form work where concrete, cement, or like material is used, and they do not enlarge the act to cover any other means employed in the process of construction; labor indirectly employed, unless it be upon forms put to the specified use, will not give rise to a lien; necessity is not the test, under the statute, whether a lien shall attach; the question is whether the labor performed in furnishing such heat is labor performed in constructing the building, or is labor performed in one of the processes of construction as a means to assist in the erection of the building; the statute makes a distinction between material delivered for the purpose of being used in the construction of a building and that used merely as a means in the process of construction, except where specifically provided by the act, as in the case of forms or form work: Hoier v. Kaplan (1924), 313 Ill 448, 145 NE 243.

The principal cases referred to by the plaintiff are: Acker v. Vanderboom (1927), 327 Ill 267, 158 NE 476, Alexander Lumber Co. v. City of Farmer City (1916), 272 Ill 264, 111 NE 1012, New Erie Coal Co. v. H. McMullen & Sons (1928), 247 Ill App 515, and Douglas Lumber Co. v. Chicago Home for Incurables (1942), 380 Ill 87, 43 NE2d 535. Though Douglas Lumber Co. v. Chicago Home etc. is referred to in the points and authorities of its brief here the plaintiff makes no further reference to it in the argument portion of its brief, and the case, involving a lien for crushed stone, sand, and cement sold to a subcontractor and used in concrete work and lumber used in making forms in concrete construction, appears to have no applicability to the case at bar. Acker v. Vanderboom et al.

had to do with a claim for lien by a subcontractor of a contractor having a contract for a public improvement,—roads,—for the State, under Section 23 of the Act, for gasoline and oil furnished and actually used and entirely consumed in operating and lubricating the contractor's trucks, concrete mixers, and other machinery and in the operation of lights necessarily used in the construction of the roadways concerned, and was controlled by Standard Oil Co. v. Vanderboom (1927), 326 Ill 418, 158 NE 151, an allied case; the cases arose under Section 23, not Sections 21 or 1 of the Act; they did not involve claims for machinery furnished or used; and the gasoline, oil and grease furnished the contractor were necessarily entirely consumed in making the improvement. Alexander Lumber Co. v. City of Farmer City, 272 Ill 264, 111 NE 1012, related to claims for liens by several subcontractors of a contractor having a contract for a public improvement,—a sewer system,—for a City, under Section 23 of the Act; the bulk of the opinion relates to points not concerned in the present case; some very small parts of certain of the claims were evidently for the use of an engine and pump, oil barrels, a tank and pipe for carrying water to the trench or concrete mixing boxes; the case, again, was under Section 23, not Sections 21 or 1 of the Act; the Court there said: "The construction of Section 23 is not governed by the construction given the provisions of the Act relating to the enforcement of liens afforded against the owner's real estate"; and as the Court later said in McMillan v. Joseph P. Casey Co. (1924), 311 Ill 584, 143 NE 468, in commenting on the Alexander case: ". . . there was no intention of holding in that opinion that machinery and apparatus, simply because furnished a contractor for public work, could be made the basis of a mechanic's lien regardless of whether it became a constituent part of the improvement. . . .

106

the opinion does not justify the interpretation that, regardless of how the machinery, apparatus or material is used, a lien may be had for the purchase price of the same." New Erie Coal Co. v. H. McMullen & Sons, 247 Ill App 515, was a claim for a lien under Section 23 of the Act for the rental by New Erie Coal Co. to H. McMullen & Sons, the contractor under a contract with a County for a hard road, of a crane used in the construction of the road; the Court reiterated that it was settled law that no lien can be had under Section 23 for the purchase price of machinery sold a contractor for use on public work; but the Court held a claim for rental of machinery used in the construction is a lienable thing under Section 23; the case alluded to the distinctions between Section 23 and Section 1; again, the case involved Section 23 and not Sections 21 or 1; no precedent directly in point was cited; and a reference to the citator indicates that this case has only been referred to once in any later case,—in Edwin Pratt's Sons' Co. v. Schafer (1937), 290 Ill App 80, 7 NE2d 901,—and then on a point not presently concerned, and it has never been subsequently cited or followed in the 36 years since it was determined on the main point here involved as to whether a party in the position of New Erie Coal Co. under such circumstances is a subcontractor and has a lien under Section 23, much less under Section 21. Under the circumstances, we do not believe those cases militate against our views here.

Under Section 21 of the Act, relating to subcontractors' liens relative to private improvements on private property, which is the particularly relevant part of the Act as to this case, the only place where the language "in the process of construction" is used is as to "material" for "form or form work,"—the clause being "or shall furnish any material to be employed in the process of construction as a means for assisting

in the erection of the building or improvement in what is commonly termed form or form work where concrete, cement or like material is used in whole or in part." The language "in the process of construction" does not apply to any of the other items referred to in the prior clause,—"any materials, apparatus, machinery or fixtures, or furnish or perform services or labor." Hence any of those other items in that prior clause,—"materials, apparatus, machinery or fixtures, or . . . services or labor" which are used only "in the process of construction" and as a "means for assisting in the erection of the building or improvement" are not within the meaning and scope of Section 21, and a "mechanic, workman or other person who shall furnish" any of such other items which are so used only "in the process of construction" and as a "means for assisting in the erection of the building or improvement" is not a subcontractor thereunder and has no lien thereunder for the value thereof.

Also, in Section 1, relating to contractors' liens relative to private improvements on private property, the only places where the language "in the process of construction" is used is as to "forms or form work," the clauses being "forms or form work used in the process of construction where cement, concrete or like material is used" and "forms or form work used in the process of construction where concrete, cement or like material is.used." The language "in the process of construction," again, does not apply to any of the other items referred to in that section,—material, fixtures, apparatus or machinery, etc.

And Section 7, relating, in part, to the preservation of liens for materials under certain circumstances, though not directly concerned with anything except materials, is persuasive of the Legislature's general intention that an item to be lienable must be "used in said building or improvement" or "used in con-

struction," or, as to materials only, must be delivered to be so used or for the purpose of being so used, and that the only item "employed in the process of construction" intended to be covered is materials "employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed forms or form work where concrete, cement or like material is used, in whole or in part."

Section 23, relating to subcontractors' liens relative to public improvements for various governmental bodies, which is not here applicable, but which is involved in some of the cases referred to, omits, it will be observed, the clause found in Section 21 reading "or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed forms or form work where concrete, cement or like material is used in whole or in part," which omission may possibly make the meaning of the items referred to therein—"material, apparatus, fixtures, machinery or labor" not quite as clear as the meaning of the similar items referred to in Section 21. Also, it will be seen, the first sentence of Section 23 is "For the purpose of this section 'contractor' includes any subcontractor." There is no such provision in Section 21. A party alleged to be a subcontractor as to private improvements on private property, under Section 21, is not included in "contractor" as that term is used in Section 1 as to contractors' liens relative to private improvements on private property.

The items of machinery and apparatus here concerned were, it appears from the amended complaint, used only in the process of construction and as a means to assist in the improvement. They were not used in the improvement as such. They were not used

109

in such a manner as to become attached to or form a part of the real estate. They did not become fixtures. They did not enter into the permanent construction of the improvement and did not become a part thereof. They were, apparently, afterwards taken away. They were not destroyed by the use made thereof, though allegedly depreciated in value. They never became, and were never intended to become the property of the owner of the improvement, the defendant, Lake Petersburg Association, but belonged and continued thereafter to belong to the plaintiff, D. D. Kennedy, Inc., or to the contractor, Ankrom, were employed in the temporary use for which they were allegedly obtained, and were, apparently, taken away by the plaintiff or Ankrom to be used again for its or his own purposes. They were not consumed in and did not become a constituent part of the construction of the improvement. They were not permanently furnished for the improvement upon which the claimed lien is sought to be impressed. The ownership thereof was intended to be retained in either the plaintiff or Ankrom. Presumably the contractor Ankrom was prepared with machinery and appliances to do his work, —his alleged contract with the owner so indicated,— and if the items here concerned were furnished him by the plaintiff they were furnished upon his own credit and as a part of his working equipment and business and were not furnished upon the implied credit of the real estate or fund concerned. It was not intended that the real estate or fund concerned referred to in Section 21 be the source of indemnity to a contractor for his working equipment. Uses thereof in the process of construction afford no basis for a lien unless specifically so provided in the Act.

It is unnecessary to determine whether, under the allegations of the amended complaint, the plaintiff sold the machinery and apparatus to the contrac-

tor Ankrom, or rented it to him. We have assumed for this purpose that it was rented, which is the plaintiff's view. In any event, under the allegations thereof, we believe, under the circumstances, that the plaintiff was not a "mechanic, workman, or other person who shall furnish any materials, apparatus, machinery, or fixtures, or furnish or perform services or labor for the contractor," within the meaning of Section 21, that it was not a "subcontractor" within the meaning thereof, and that it has no lien thereunder. The order striking the amended complaint and entering a final judgment for the defendant was correct and is affirmed.

Affirmed.