FIFTH DIVISION

SEPTEMBER 6, 2002

Nos. 1-00-4213, 1-01-0857, and 1-01-2556 (Consolidated)

LUISE, INC., an Illinois corporation, ) APPEAL FROM THE

Plaintiff-Appellant, ) CIRCUIT COURT

) OF COOK COUNTY.

v. )

)

THE VILLAGE OF SKOKIE, )

Defendant-Appellee, )

)

and )

) HONORABLE

SZABO CONTRACTING, INC., and ) CLIFFORD L. MEACHAM,

PEERLESS INSURANCE COMPANY, ) ROBERT J. QUINN,

Defendants. ) JUDGES PRESIDING.

BERKELEY TRUCKING INC., an Illinois corporation, )

Plaintiff-Appellant, )

v. )

)

THE VILLAGE OF SKOKIE, and FIDELITY & )

DEPOSIT COMPANY OF MARYLAND, )

Defendants-Appellees, )

)

and )

)

SZABO CONTRACTING, INC. )

and PEERLESS INSURANCE COMPANY, )

Defendants. )

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court: 

This is a consolidated appeal.  Plaintiff, Luise, Inc., an Illinois corporation (Luise), appeals from a final judgment of the circuit court of Cook County granting summary judgment in favor of defendant, the Village of Skokie, Illinois (Village), pursuant to section 23 of the Mechanics Lien Act (The Act) (770 ILCS 60/23 (West 2000)), in connection with subcontracting trucking work Luise performed on the Village's sewer project.  In addition, plaintiff Berkeley Trucking, Inc., another subcontractor that performed on the same sewer project, appeals from entry of an order (1) dismissing Berkeley's lien foreclosure claim against defendants Szabo Contracting, Inc. (Szabo),  the Village, and Peerless Insurance Company (Peerless), pursuant to section 2-619 of the Illinois Code of Civil Procedure (The Code) (735 ILCS 5/2-619 (West 2000)); and (2) dismissing Berkeley's claims for 
quantum meruit 
and unjust enrichment and third party beneficiary claims pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2000)).  For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

BACKGROUND

The following facts are relevant to this appeal.  On March 17, 1997, Szabo entered into a contract with the Village to construct a storm sewer system for the Village, known as "Village of Skokie Storm Sewer & Detention Facilities, Phase J, Project SS97.2" (Skokie Project).  The Skokie Project involved the installation of a new sewer line along several sections of Howard and Main Streets in Skokie.  The work proceeded in two steps:  The first step was the removal of the old sewer line, which involved, 
inter alia
, the excavation and removal of the old sewer pipe and all associated construction and demolition debris.  The second step was the installation of the new sewer pipe, including, but not limited to, the delivery and installation of sand and stone aggregate sub-base materials.  

Szabo entered into a subcontract with Luise to perform "trucking," which included the hauling of debris from the site and the delivery of aggregate stone to the site.  The work is described as follows in the subcontract agreement:  "Subcontractor agrees to furnish at his own cost and expense trucking of material to job site and trucking of spoils." 

Szabo entered into a separate subcontract with Berkeley, another trucking company, to provide "hauling, disposal and other services." 

Neither Luise nor Berkeley was paid for its performance of its respective contracts with Szabo.  On February 18, 1998, Luise sent out a verified notice of lien for the amount of $126,771.79, via certified mail to the Village.  On May 4, 1998, Berkeley sent out a verified notice of lien for the amount of $254,107.28, via certified mail to the Village.  At the time of service of the lien notices, the Village retained sufficient funds to pay the claims of Luise and Berkeley, having not yet paid Szabo.  After November 8, 1998, the Village released funds in the amount of $571,668.29 to Szabo after obtaining a "Release of Lien Bond" from Fidelity & Deposit Company of Maryland (Fidelity).

Luise's Action

On April 3, 1998, Luise filed a verified complaint in seven counts, against the Village, Szabo, the City of Evanston (Evanston), USF & G Insurance Company (USF&G), and Peerless Insurance Company (Peerless).  In  count I, Luise sought foreclosure on a mechanics' lien filed on a project for Evanston (Evanston Project).  Count II alleged breach of contract against Szabo for the Evanston Project.  Count II sought recovery for a payment bond provided on the Evanston Project and count IV alleged breach of a third-party beneficiary contract for the Evanston Project.  In count V, Luise sought foreclosure of the lien filed on the Skokie Project.  In count VI, Luise sought judgment against Szabo for breach of contract for the Skokie Project, and count VII asserted an action for breach of the third-party beneficiary contract for the Skokie Project.  On August 26, 1998, Luise filed an amended complaint adding a count for recovery on a payment bond provided by Peerless for the Skokie Project.  The added count became count VII and the count for breach of the third-party beneficiary contract for the Skokie Project became count VIII.

On November 10, 1999, the trial court entered a default judgment against Szabo in connection with the counts relating to the Evanston Project and Evanston was ordered to pay $90,455.27 to Luise.  On June 13, 2000, the trial court granted Luise leave to withdraw and nonsuit count VIII of its amended complaint against Skokie.  However, during the course of the proceedings, Szabo filed for bankruptcy, and Luise's action was stayed.  On June 19, 2000, the bankruptcy court entered an order modifying the stay and allowing Luise to proceed with its case as long as no recovery was sought from Szabo.  On July 7, 2000, the court granted Luise's motion for voluntary dismissal of its action against Peerless.   

On May 4, 2000, Luise filed a motion for summary judgment and a supporting memorandum as to count V of its amended complaint.  On August 31, 2000, the Village filed a countermotion for summary judgment against Luise. The Village argued that the services provided by Luise on the Skokie Project are not lienable under section 23 of the Mechanics Lien Act (770 ILCS 60/23 (West 2000)).  Judge Clifford Meacham heard oral arguments on the cross-motions for summary judgment on September 26, 2000.

On November 1, 2001, Judge Meacham issued a memorandum opinion and order denying Luise's motion for summary judgment and allowing the Village's motion for summary judgment, based on a finding that the services provided by Luise on the Skokie Project were not lienable under section 23 of the Mechanics Lien Act.  The order included Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) language making it a final and appealable order.  Luise filed a timely notice of appeal on December 1, 2001. 

Berkeley's Action

Berkeley filed a verified complaint in five counts on August 3, 1998.  In count I, Berkeley sought to foreclose a mechanics' lien on the Skokie Project.  Count II alleged breach of contract against Szabo; count III sought recovery on a 
quantum meruit
 theory; in count IV, Berkeley sought recovery under a payment bond provided by Peerless; and count V sought recovery against the Village for unjust enrichment.  On December 7, 1999, Berkeley filed an amended complaint adding Fidelity as a party pursuant to the "Release of Lien" bond provided by Fidelity.

On January 11, 2000, Berkeley's action was stayed pursuant to Szabo's bankruptcy proceedings.  The bankruptcy court entered an order modifying the stay and allowing Berkeley to pursue its claims under the Mechanics Lien Act on March 31, 2000, subject to the provision that Berkeley could not enforce or collect any judgment or deficiency against Szabo in the lien foreclosure action.

On April 18, 2000, Fidelity filed a combined motion to dismiss seeking, in part, to dismiss count VI of Berkeley's amended complaint pursuant to section 2-615.  After oral arguments on June 21, 2000, Judge Robert J. Quinn entered an order granting Fidelity's motion regarding count VI of Berkeley's amended complaint.  The order of June 21, 2000, allowed Berkeley to file an amended complaint, and on July 12, 2000, Berkeley filed its second amended complaint, omitting count VI, which had contained allegations against Fidelity for recovery on the "Release of Lien" bond it provided.

On July 28, 2000, the Village filed a combined motion to dismiss seeking dismissal of count I (foreclosure of mechanics' lien) pursuant to section 2-619, and counts II (
quantum meruit
) and V (unjust enrichment) pursuant to section 2-615.  On January 3, 2001, following oral arguments, Judge Quinn issued a written decision and order dismissing count I of Berkeley's second amended complaint.  Judge Quinn found that the services provided by Berkeley on the Skokie Project are not lienable under section 23 of the Mechanics Lien Act.  Judge Quinn also dismissed Berkeley's counts against the Village for 
quantum meruit
 and unjust enrichment.  On January 8, 2001, the Village filed a motion to certify the court order of January 3, 2001, and Judge Quinn entered an order finding no just reason to delay enforcement of the order of January 3, 2001.  Berkeley filed a timely notice of appeal of the dismissal of court I on March 1, 2001.

On February 9, 2001, Berkeley filed a third amended complaint, renewing count VI against Fidelity and amending the allegations contained within counts IV and V for 
quantum meruit
 and unjust enrichment.  On June 26, 2001, Judge Quinn entered an order giving leave to Berkeley to withdraw paragraphs 39 and 41 of its verified third amended complaint which contained the allegations of 
quantum meruit
 and unjust enrichment.  The order also granted the Village's motion to strike and dismiss counts IV and V for the reasons set forth in the prior orders of January 3, 2001, and June 21, 2000.  The order provided that there was no just reason to delay the enforcement or appeal, pursuant to Rule 304(a) (155 Ill. 2d R.304(a).)  Berkeley filed a timely notice of appeal on July 9, 2001.

OPINION

Initially, Luise contends that the trial court, Judge Meacham presiding, erred in entering its order of November 1, 2000, granting summary judgment in favor of the Village after finding that the work performed Luise is not lienable under section 23 of the Mechanics Lien Act (770 ILCS 60/23 (West 2000)).  

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party's right is clear and free from doubt.  
In re Estate of Hoover
, 155 Ill. 2d 402, 410-11, 615 N.E. 2d 736 (1993).  Our review is 
de novo
.  
Mandziara v. Canulli
, 299 
 
Ill. App. 3d 593, 596, 701 N.E. 2d 127 (1998).

The Mechanics Lien Act defines the services that are lienable in three separate sections.  Plaintiffs brought their respective actions under section 23 of the Act, which controls liens against public funds.  Section 23 provides, in pertinent part, as follows:

"§ 23.  Liens against public funds.

(a) For the purpose of this Section 'contractor' includes any sub-contractor * * *. 

(b) Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for any county, township, school district, city, municipality or municipal corporation in this State, shall have a lien for the value thereof on the money, bonds, or warrants due or to become due the contractor having a contract with such county, township, school district, municipality or municipal corporation in this State under such contract.  Provided, such person shall, before payment or delivery thereof is made to such contractor, notify the clerk or secretary, as the case may be, of the county, township, school district, city, municipality or municipal corporation of his claim by a written notice and furnish a copy of said notice at once to said contractor.  The person claiming such lien may cause notification and written notice thereof to be given either by sending the written notice (by registered or certified mail, return receipt requested, with delivery limited to addressee only) to, or by delivering the written notice to the clerk or secretary, as the case may be, of the county, township, school district, city, municipality, or municipal corporation;  and the copy of the written notice which the person claiming the lien is to furnish to the contractor may be sent to, or delivered to such contractor in like manner.  And, provided further, that such lien shall attach only to that portion of such money, bonds, or warrants against which no voucher or other evidence of indebtedness has been issued and delivered to the contractor by or on behalf of the county, township, school district, city, municipality or municipal corporation as the case may be at the time of such notice.  

(c) Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for the State, may have a lien for the value thereof on the money, bonds or warrants due or about to become due the contractor having a contract with the State under the contract, by giving to the Director or other official, whose duty it is to let such contract, written notice of his claim for lien containing a sworn statement of the claim showing with particularity the several items and the amount claimed to be due on each.  The claimant shall furnish a copy of said notice at once to the contractor.  The person claiming such lien may cause such written notice with sworn statement of claim to be given either by sending such notice (by registered or certified mail, return receipt requested, with delivery limited to addressee only) to, or by delivering such notice to the Director or other official of the State whose duty it is to let such contract;  and the copy of such notice which the person claiming the lien is to furnish to the contractor may be sent to, or delivered to such contractor in like manner.  However, the lien shall attach to only that portion of the money, bonds or warrants against which no voucher has been issued and delivered by the State.  

(d) Any officer of the State, county, township, school district, city, municipality or municipal corporation violating the duty hereby imposed upon him shall be liable on his official bond to the claimant giving notice as provided in this Section for the damages resulting from such violation, which may be recovered in a civil action in the circuit court.  There shall be no preference between the persons giving such notice, but all shall be paid pro rata in proportion to the amount due under their respective contracts." 770 ILCS 60/23 (West 2000).

Lien claims for public improvements confer rights only upon funds appropriated to finance public improvements, not upon real property.  
Alexander Lumber Co. v. Coberg
, 356 Ill. 49, 54 (1934); 
Aluma Systems, Inc. v. Frederick Quinn Corp.
, 206 
 
Ill. App. 3d 828 (1990). 

The other sections of the Act, sections 1 and 21, pertain to liens on private property and therefore do not apply to the present case.  
Coberg
, 356 Ill. at 54-55;  
Struebing Construction Co. v, Golub-Lake Shore Place Corp
., 281 
 
Ill. App. 3d 689 (1996).  However, the history of sections 1 and 21 is pertinent to the understanding of the Act. 

Prior to 1913, section 1 of the Act provided as follows:

"That any person who shall by any contract or contracts, expressed or implied, or partly expressed and partly implied, with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, furnish materials[,] fixtures, apparatus or machinery for the purpose of, or in the building, altering, repairing or ornamenting any house or other building, walk or sidewalk, whether such walk or sidewalk be on the land or bordering thereon, driveway, fence or improvement, or appurtenance thereto on such lot or tract of land, or connected therewith, and upon, over or under a sidewalk, street or alley adjoining;  or fill sod or excavate such lot or tract of land, or do landscape work thereon or therefor;  or raise or lower any house thereon, or remove any house thereto; or perform services as an architect for any such purpose; or furnish or perform labor or services as superintendent, timekeeper, mechanic, laborer or otherwise, in the building, altering, repairing or ornamenting of the same;  or furnish materials, fixtures, apparatus, machinery, labor or services on the order of his agent, architect or superintendent having charge of the improvements, building, altering, repairing or ornamenting the same, shall be known under this act as a contractor, and shall have a lien upon the whole of such lot or tract of land and upon the adjoining or adjacent lots or tracts of land of such owner constituting the same premises and occupied or used in connection with such lot or tract of land as a place of residence or business;  and in case the contract relates to two or more buildings, on two or more lots or tracts of land, upon all of such lots and tracts of land and improvements thereon for the amount due to him for such material, fixtures, apparatus, machinery, services or labor, and interest from the date the same is due."  Ill. Rev. Stat. 1911, ch. 8 par. 15.

Over time, the courts and the legislature expanded the definition of "lienable" under sections 1 and 21 of the Act. 
 The 1919 amendment extended the lien to cover forms used in cement work; the 1937 amendment extended the lien to the well driller; the 1951 amendment allowed the lien for the performance of services as a professional engineer or land surveyor; the third sentence from the end expressing the extent of this lien was abbreviated in 1971 by the deleting language making a lien superior to any rights of a dower of husband or wife in the premises if the owner of the dower interest had knowledge of such improvement and failed to give written notice objecting to the improvement before the improvement was made.

Illinois courts have held that while the Act should be construed liberally as a remedial one,  being in derogation of the common law, it is strictly construed with reference to the requirements upon which the right to a lien depends.  
Charles A. Hohmeier Lumber Co. v. Knight
, 350 Ill. 248, 182 N.E. 715 (1932); 
Roth v. Lehman
, 1 Ill. App. 2d 94, 116 N.E.2d 413. (1953).  Mechanics liens exist only by virtue of the statute creating them, and such statutes must be strictly followed with reference to all requirements upon which the right to a lien exists.  
Robinette v. Servite Fathers
, 49 
 
Ill. App. 3d 585, 587 (1977). 
 Mechanics' liens should be enforced when the party brings himself within the provisions of the statute, but they should not be extended to cases not provided for by the language of the Act even though they may fall within its reason.  
Provost v. Shirk
, 223 Ill. 468, 79 N.E.178  (1906);  
Hoier v. Kaplan
, 313 Ill. 448, 145 N.E. 243  (1924).  

In 
Hoier
, our supreme court held that section 1 did not extend to public liability insurance, workers' compensation insurance, or labor and material used to heat a building during the course of construction.  The court noted a distinction between labor as a process of construction and labor as a means to assist in the erection of the building.  While recognizing the necessity of the service, the court nevertheless found the labor used to provide heating to be nonlienable. 

In
 
Robinette,
 this court held that the demolition and hauling away of debris were not lienable items under section 21 of the statute.  The court held that demolition does not fall within the express language of the Act, and is therefore excluded.  The court set forth the reason for not granting a mechanics' lien for the demolition of a building as follows:

" 'The theory of the mechanic's lien law is, that the mechanic or materialman has performed work or furnished materials in the construction or repairing of buildings or other improvements on land, by which the value of the latter has been enhanced; and the law attaches a lien in favor of the mechanic to the building or other improvements in the first instance, and this lien is made to extend to a certain quantity of land on which the buildings are located.  When a building is merely removed from premises, it is quite apparent that the right to a lien against the land alone could not exist. '"  
Robinette
, 49
 
Ill. App. 3d at 587 (quoting Annot., 
Removal of Demolition of Building or Other Structure as Basis for Mechanic's Lien
, 63 A.L.R. 1250, p. 1255 (1929); quoting; 
Bruns v. Braun
, 35 Mo. App. 337, 347 (1889).

After 
Robinette
, in 1981, the legislature amended section 1 to add the phrase:  "or remove any house or other structure therefrom" to the first sentence of the Act.  Pub. Act 81-1185, eff. July 1, 1980.

In 
Cleveland Wrecking Co. v. Central National Bank of Chicago
, 216 
 
Ill. App. 3d 279 (1991), this court considered the lienability of work to demolish structures necessary for new construction to proceed under section 1 of the Act.  Relying on 
Robinette
, this court recognized that the basis for such a lien is the performance of work or the furnishing of materials that constitute an improvement on the land.  The court focused its inquiry on determining whether the work performed has enhanced the value of the land to be charged with the lien.  
D.M. Foley Co.  v. North West Federal Savings & Loan Ass'n.
, 122 Ill. App. 3d 411, 461 N.E.2d 500 (1984).

The 
Cleveland
 court found that 
Robinette
 involved a different version of the Mechanics Lien Act and was factually distinguishable
.  
Robinette
 was decided under the 1973 version of the Mechanics Lien Act (see Ill. Rev. Stat.1973, ch. 82, par. 1), while 
Cleveland
 involved the amended 1981 statute, which added the phrase "or remove any house or other structure therefrom" (Ill. Rev. Stat. 19 ch. 82, par.1).  This court held that the new language expressly makes lienable what the 
Robinette
 court had found was not, and that the validity of this argument is apparent when the controverted phrases are compared.  While the 1973 statute restricted coverage to raising or lowering any house thereon or removing any house thereto, the 1981 version expanded coverage to any house "or other structure" and included removing "therefrom" as well as the previous removing "thereto."  This court found that Cleveland's demolition and hauling away of debris were encompassed by the "removing other structure therefrom" language:  

"Although C&E argues that both versions of the statute should be similarly construed as both employ the same verb, 'remove,'what it neglects to note is that the corresponding sections of the statute employ different adverbs, namely 'thereto' and 'therefrom,' which substantially change the meaning of their common verb."  
Cleveland
,  216 Ill. App. 3d at 286.

Furthermore, the 
Robinette
 plaintiff merely removed debris from a building someone else had demolished.  Cleveland contracted to strip out and demolish certain structures in order to make way for new construction.  Cleveland's work, the court found, unlike that of the 
Robinette
 plaintiff was an integral part of an overall plan to improve the land and was therefore considered lienable activity under the Act.

C & E also argued that even if Cleveland's demolition work constituted lienable activity, its removal of debris did not.  C & E maintained that since the contract in question specified a lump sum for both types of work, the activities are inseparable and nonlienable.  This court held that Illinois case law does support the proposition that where a lump sum contract includes both lienable and nonlienable work, and such items cannot be separated, the entire lien must fail.  
Adler v. World's Pastime Exposition Co.
, 126 Ill. 373, 18 N.E. 809 (1888); 
Flader Plumbing & Heating Co. v. Callas
, 171 Ill. App. 3d 74, 524 N.E.2d 1097 (1988). This court found that the above mentioned cases both involve clearly demarcated lienable and nonlienable activities; 
Adler
 involved the nonlienable activities of keeping books, auditing accounts, and making settlements with various contractors
, while 
Flader
 concerned a plumber who admitted that certain items in his lien claim, such as plugged gas lines and connected water lines, were not lienable.  
This court held that the activities in 
Cleveland
 were not so clearly delineated as lienable and nonlienable.  Rather, a liberal construction of the statute, considering its remedial purpose, led to a finding that both are lienable.  

The court further found that the demolition and debris removal as performed by Cleveland are inseparable and interdependent activities, for without the demolition work there would be no debris to remove, and without the removal of the demolition debris the value of the property would not be enhanced.  The court relied on 
Verplank Concrete & Supply, Inc. v. Marsh
, 40 Ill. App. 3d 742, 353 N.E.2d 27  (1976).  In 
Verplank
, this court held that even though truck rental is a nonlienable activity (since the concrete could not be mixed without the trucks), to deny plaintiff's lien claim for concrete and truck rental would be to elevate form over substance and not in any way advance the purposes of the Act.  
Cleveland
, 216 
 
Ill. App. 3d at 287.

In the present case, the record shows that the activity of hauling is separate from the excavation:  Luise hauled; Szabo excavated.  Thus, it appears that the trial court correctly found that separability was not a factor in the present case.  In terms of interdependence, while it is certain that the trucking portion of the job was a necessary component of the work, it is generally held that "necessity" is not the test of lienability.

The trial court here found that while section 1 was amended over time to address hauling,  section 23 is the operative provision in the present case and section 23 remains silent as to the lienability of the removal of spoils from a construction site.  Thus, the trial court concluded that there is no authority supporting the proposition that trucking services, either in conjunction with or separate from excavation, are lienable under section 23.

The trial court relied on 
D.D. Kennedy, Inc.  v. Lake Petersburg Association,
 54 
 
Ill. App. 2d 85, 203 N.E.2d 145 (1964).  There, this court found that under section 23, the furnishing of earth-moving machinery and apparatus to a contractor, used only in the process of construction and not so as to become fixtures or part of the improvement, and not destroyed by use, although allegedly depreciated in value, did not make the furnisher a "subcontractor" eligible for a lien on improved property:  the items "were not used in such a manner as to become attached to or form a part of the real estate."  
D. D. Kennedy
, 54 
 
Ill. App. 2d at 109-10.  

However, our supreme court has allowed lien claims for work that neither became a constituent part of the improvement nor was directly consumed in the process of construction.  In 
Alexander Lumber Co. v. City of Farmer City
, 272 
 
Ill. 264, 111 N.E.1012 (1916), the plaintiff provided lumber on a sewer project for sheathing and shoring a trench.  The court found that  the use of an engine and pump, oil barrels, a tank, and the lumber that the Alexander Lumber Company used in building forms at the retaining or head wall and as a track upon which to run heavy excavating machines was lienable as these materials were actually used in the construction of the work.  The court noted that although the materials did not become a part of the completed sewer, they were left in the trenches, where they were used for shoring or other purposes, for the protection of the men at work and also to protect the sewer.  The court further noted that the materials were used up by the contractor in the work and were not returned to the lumber company or taken away for further use:  "The construction of section 23 is not governed by the construction given the provisions of the act relating to the enforcement of liens afforded against the owner's real estate.  These provisions of the act give no lien against money in the owner's hands due the contractor, but the lien is against the real estate and improvement."  
Alexander Lumber Co.
, 272 Ill. at 274-75. 

Similarly, the court in 
Aluma Systems
 did not dispute the lienability of rental equipment for use at a construction site at the University of Illinois and held that as a supplier to a sub-subcontractor, Aluma's claim was covered by the mechanics lien statute.  
Aluma Systems, Inc.
, 206 
 
Ill. App. 3d
 at 850. 

In 
Lyons Savings v. Gash Associates
, 279 
 
Ill. App. 3d 742, 665 N.E.2d 326 (1996), this court found that while maintenance of property is not lienable, cleaning grease, oil and debris left behind on a construction site is lienable. Although 
Lyons
 involved a private project,  and the lien claim was not made pursuant to section 23, the result is instructive here. 

There appears to be a tension between a strict and liberal construction of the Act.  Despite this statutory strain, we find that the totality of the developing case law in all sections of the Act is broad enough to interpret section 23 as including the type of services and labor performed here, 
the hauling of debris from the jobsite and the delivery of raw materials to the job site necessary to complete the construction of a new sewer.  As noted above, the determination of a matter on summary judgment should be free from doubt.  We cannot find that the judgment is free from doubt when the trial court's determination precludes the services performed by Luise as covered under section 23 of the Act.  We therefore vacate the order of November 1, 2000, granting summary judgment in favor of the Village and remand this matter to the circuit court for further proceedings consistent with our findings.

Next, Berkeley contends that  the trial court erred in dismissing its lien foreclosure claim against defendants Szabo,  the Village, and Peerless, pursuant to section 2-619 of the Illinois Code of Civil Procedure, and its claims for 
quantum meruit
 and unjust enrichment and third-party beneficiary claims pursuant to section 2-615 of the Code of Civil Procedure.  

A motion brought under section 2-619 admits the legal sufficiency of the plaintiff's cause of action.  See 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993). Under section 2-619, a motion to dismiss should be granted if, after construing the pleadings and the supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted.  
Owens v. McDermott, Will & Emery
, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (2000).  The defendant has the burden of proving the affirmative defense relied upon in a section 2-619 motion.  
Streams Condominium No. 3 Ass'n v. Bosgraf
, 219 Ill. App. 3d 1010, 1013-14, 580 N.E.2d 570, 573 (1991).  Conclusions of law or conclusions of fact not supported by allegations of specific fact are not admitted.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996).  Motions to dismiss under section 2-619 of the Code are reviewed 
de novo
.  
Owens
, 316 Ill. App. 3d at 344, 736 N.E.2d at 150.

A motion to dismiss under section 2-615 tests the legal sufficiency of a pleading.  
Doe v. Calumet City
, 161 Ill. 2d 374, 384, 641 N.E.2d 498 (1994).  In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as being true and all reasonable inferences from those facts are drawn in favor of the plaintiff.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490, 675 N.E.2d 584 (1996).  The question on appeal from the granting of a section 2-615 motion is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Connick
, 174 Ill. 2d at 490, 675 N.E.2d 584.  The sufficiency of a complaint is an issue of law that we review 
de novo
.  
People ex rel. Devine v. $30,700.00 United States Currency
, 316 Ill. App. 3d 464, 474, 736 N.E.2d 137 (2000).

In its order of January 3, 2001, regarding Berkeley's claim, the trial court found:

"BERKELEY'S claim in Count I under the Mechanics Lien Act fails because Berkeley did not provide any lienable services. * * *  The Court finds that, in order to be lienable pursuant to Section 23, material, apparatus, fixtures, machinery or labor supplied by the sub­contractor must (1) be used or consumed during the act of constructing the public improvement; (2) become a constituent part of the public improvement; or (3) be employed in preparing the site for construction of the public improvement.  Hence BERKELEY's mere transport of materials to the construction site is not a lienable service."

Consistent with our review of the order in the Luise matter, we find that the trial court erred in finding that the activities of Berkeley are not lienable.  
Berkeley has stated a proper lien claim for its labor and services under section 23 of the Act despite the fact that such labor and services do not meet the trial court's standard definition of "used and consumed."  Ample case law demonstrates a broader interpretation of "consumption" and "use" as they apply to labor on a public works project than the trial court determined.  We therefore vacate the order of dismissal of Berkeley's lien claim pursuant to both sections 2-619 and 2-615 of the Code, and remand this matter to the trial court for further proceedings.

Finally, 
in its reply brief, the Village raised two additional issues:  (1) whether Berkeley failed to comply with the prerequisites of section 23 of the Mechanics' Lien Act and (2) whether Luise's lien is barred because the Village relied on Luise's waiver of lien to date.  Neither of the issues raised by the Village in its reply was disposed of in the trial court, and therefore, those issues are not properly before this court.  
We make no determination of these matters on appeal.

For all of the reasons stated above, we therefore vacate the rulings of the trial court and remand the matters pertaining to the claims of Luise and Berkeley to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

QUINN and REID, JJ., concur.