Arrow Contractors Equipment Company, a Corporation, Plaintiff-Appellee, v. Arthur J. Siegel, d/b/a Seco Construction Company, Defendant. Aetna Casualty & Surety Company, a Corporation; and Board of Education of the City of Chicago, a Body Politic Corporate, Defendants-Appellants.

Gen. No. 49,704.

First District, Third Division.

February 10, 1966.

Dent, Hampton & Doten, of Chicago, for appellants.

Jerome F. Dixon and John E. Golden, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendants Aetna Casualty & Surety Company and Board of Education of the City of Chicago appeal from a decree in which judgment was entered for $6,732.54, against defendant Arthur J. Siegel, d/b/a Seco Construction Company, a general contractor, and decreeing a section 23 lien therefor upon money, bonds or warrants in the hands of the Board of Education of the city of Chicago; also from that part of the same decree entering

judgment in the sum of $6,732.54 against Aetna Casualty & Surety Company upon the statutory performance and payment bond. The decree directs that all costs, stenographic and master's fees be adjudged against the defendants.

The defendants argue two points, (a) that section 23 (Ill Rev Stats 1961, c 82, § 23) does not provide a lien against public contract funds for major repairs to contractor's own equipment which were not consumed in the performance of the contract work, and (b) plaintiff is not entitled to recover upon the statutory performance and payment bond of Aetna Casualty & Surety Company.

The facts are these: On January 26, 1961, Arthur J. Siegel, d/b/a Seco Construction Company, entered into a contract with the Board of Education of the City of Chicago for the construction of the Ludwig Von Beethoven School at 48th and State Streets, Chicago, Illinois. Under the contract the contractor was required to furnish all material and do the work required in the erecting of the new elementary school building. The contractor, as principal, and Aetna, as surety, executed and delivered to the Board of Education a statutory performance and payment bond conditioned:

> "Now, if the said Arthur J. Siegel . . . shall in all things . . . truly keep and perform all of the covenants, conditions and agreements mentioned and contained in said contract . . . and shall promptly make payment to all persons supplying him labor or materials in the prosecution of said work, then the above obligation to be void, . . . ."

Siegel, the general contractor, owned a Bay City Model 185 T 60 truck crane with an 80-foot boom and a 15- or 20-foot jib which he had purchased in October, 1959, for $36,130, and had used on two other large jobs. He brought the crane to the job site about February 1, 1961, and thereafter used it to pour concrete and hoist mate-

449

rials. About April 1, 1961, the crane was standing on a construction road about 15 feet from an excavation for the north tower of the school. The outriggers, which are steel beams which slide out from the bottom of the crane to give it stability, were not out. The crane, while the operator thereof was "booming out," lost its footing and the entire unit slid down an embankment which had been excavated for the school.

The expression "booming out" means that the "stick" (boom) is out at an angle and the operator permits the boom or stick to go out too far and the machine is unable to handle that weight when the outriggers are not extended out. As a result the crane was damaged.

The plaintiff was employed by Siegel, the contractor, to make the necessary repairs. The plaintiff inspected the damaged crane at the job site, dismantled the crane and brought it to the plaintiff's shop. After making certain repairs, plaintiff returned the crane to the job site. The plaintiff invoiced the contractor for labor for its mechanic to straighten the cab fenders, install new glass in cab, replace a broken battery and install new boom complete with center sections, jibs, pendants and cable. The new parts totalled $6,358.57 including sales tax; incoming freight on the new parts totalled $88.97; hauling the crane to and from the job site cost $25, and $260 was charged for certain labor performed in repair work. After the repair of the crane it was used by the contractor in performing his concrete work under the terms of the contract with the Board of Education until early summer of 1961. The crane was then put in the contractor's yard for a few weeks and on or about August 24, 1961, was sold and delivered by contractor to O'Neill Bros. of Danville, Illinois, for $22,000.

The contract between contractor and the Board of Education provided that the contractor agrees to furnish all material and do all of the work required in the erection of the school for $1,000,742.

450

There is no claim in this case that the amount of $6,-732.54 was for material, apparatus, fixtures or machinery which were incorporated into the school building, or for labor employed by the contractor to perform work required under his contract. The amount claimed is solely for repairs made to and new parts installed by the plaintiff in a crane owned by the contractor which had been used between February 1, 1961, and early summer of 1961, in performing his contract, and which was damaged on April 1, 1961, when it tipped over into an excavation. There is no contention, nor could such a contention be sustained, that the repair items and new parts were consumed during the performance by contractor of his remaining contract work. The contractor had used the same crane on two other previous jobs as large as his contract with the Board of Education in this case. The crane was originally purchased for $36,130 in 1959 and that following its repair it was used in completing the contract work. It was sold in August, 1961, by the contractor to another contractor for approximately $22,000. It cannot therefore be said that the items supplied by the plaintiff were consumed during the performance of the contract work and yet be available to the contractor or others for other work.

The pertinent portions of section 23 (Ill Rev Stats 1961, c 82, § 23), are as follows:

> "Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for any . . . school district . . . shall have a lien on the money, bonds or warrants due or to become due the contractor having a contract with such . . . school district . . . under such contract, . . . ."

In Alexander Lumber Co. v. City of Farmer City, 272 Ill 264, 111 NE 1012, the pertinent facts were these: Farmer City had passed an ordinance for the construction of a system of sewers to be paid for in part by general

taxation and in part by special assessment. The city entered into a written contract with the Howes Bros. Company which agreed to do the work for $16,888.15. The contract between Howes Bros. Company and Farmer City provided in part as follows: "It is further agreed that all funds becoming due said contractor under this contract shall be and are subject to the provisions of section 23 of an act entitled 'An act to revise the law in relation to mechanics' liens.'" Numerous persons claimed liens on the fund which was alleged to be in the possession of the city and due to the contractor. The circuit court allowed claims and decreed their payment by Farmer City, which decree was reversed by the appellate court, and some of the lien claimants prosecuted an appeal to the Supreme Court. The decree entered in the trial court found that all of the claims were for material and labor furnished by the claimants under contracts with Howes Bros. Company. The decree of the trial court had allowed a lien on behalf of Joseph C. Gould for $179.17. The Supreme Court in its opinion on page 275 said the following:

> "It is also claimed that a small part of the claim of appellant J. C. Gould was for work in repairing machinery and tools."

The Supreme Court in that opinion, without deciding whether a small part of Gould's claim for work for repairing machinery and tools was well founded, affirmed the decree of the trial court which had found that the claims were for material and labor. The main issue of the Alexander case was whether any lien against money in the hands of a city due a contractor can be allowed in favor of subcontractors or parties furnishing material under section 23 of the lien act unless the material furnished entered into or became a part of the improvement. The court in that case did not state whether these items did or did not become a part of the improvement. The court did not discuss the repair item. The nature and

452

amount of repairs is not revealed in the opinion except that they construed a small part of an entire claim for $179.17. The opinion does not reveal whether the repairs took place because of an accident, as in the instant case, or whether they consisted only of items for the normal maintenance of machinery and tools in connection with their everyday use on the project.

The later case of Acker v. Vanderboom, 235 Ill App 417, which construed the Alexander case, concluded that the rule announced therein is that materials, services and rentals which actually are used or consumed during the progress of the work are the proper subjects of a mechanics' lien, even though they do not become a constituent, physical and component part of the completed structure.

The plaintiff here places a construction upon the Alexander case, supra, which would allow a claim for all repairs and that the cost of such repairs would constitute the basis of a lien under section 23 of the lien act, regardless of whether they contributed to the project. We think this contention is not consistent with the holding in that case.

The case of McMillan v. Joseph P. Casey Co., 311 Ill 584, 143 NE 468, has been cited by both the plaintiff and the defendants herein. In that case the plaintiffs sought a lien under section 23 for the payment of an unpaid purchase price for machinery and tools sold to a general contractor for use in performing a road building contract. The Supreme Court there held that the lien would not attach to the fund, and further said that in the Alexander case, supra, there was no intention of holding that machinery and apparatus, simply because furnished a contractor for public work, could be made the basis of a lien, regardless of whether it became a constituent part of the improvement. The court further said on page 588 of the McMillan case:

"It is contended, however, by appellants that it is the plain wording of section 23, as considered by this court in Alexander Lumber Co. v. Farmer City, 272 Ill 264, that as to a public improvement all that is required is that such material, machinery and the like be furnished the contractor, and that in itself is sufficient to give rise to a right for lien for the purchase price, whether it enters into or was furnished for the permanent use of the improvement. We cannot agree with this interpretation of the above decision. In our judgment there was no intention of holding in that opinion that machinery and apparatus, simply because furnished a contractor for public work, could be made the basis of a mechanic's lien regardless of whether it became a constituent part of the improvement. In that case there was a discussion of the purposes for which different materials were put in the improvement there made, and the statement was made that sections 1 and 23 differ as to their purpose. Even if it be conceded, as argued by counsel for appellants, that one or two small items were allowed in that case which may not have actually entered into the structure, the opinion does not justify the interpretation that, regardless of how the machinery, apparatus or material is used, a lien may be had for the purchase price of the same. The only reason, in our judgment, for a difference in the construction of sections 1 and 23 is, that as under the latter section a public improvement cannot be permitted to be security to a private person, the funds due the contractor are substituted as security. The fact that an improvement is public rather than private can afford no reason for holding that the machinery, equipment and tools are to be regarded in a different manner, unless there is some clear wording in the statute to indicate it."

On page 590 of the same opinion the court continued:

"The fact that in section 23 of the Lien act the words used are, 'shall furnish . . . to any contractor having a contract for public improvement,' while in section 1 the wording is, 'used for the purpose of or in the building,' is in our judgment of no special significance. We do not think it was intended by the legislature that the fund referred to in section 23 was intended to be the source of indemnity to a contractor or sub-contractor for his working equipment, unless there was a provision in the contract for the public improvement to that effect. There was no such showing here as to the purpose of the contract. There was no attempt to show the value of the use of or injury to the machinery, equipment, appliances or material by the two appellants, except the 4500 feet of expansion joints which became a part of the improvement, and the claim therefor was properly allowed."

The Supreme Court again was called upon to construe section 23 of the lien act in Standard Oil Co. of Indiana v. Vanderboom, 326 Ill 418, 158 NE 151. In that case, in referring to McMillan v. Joseph P. Casey Co., 311 Ill 584, 143 NE 468, the court said on page 423:

"This court, in affirming the judgment of the Appellate Court denying a lien for the machinery sold the contractor, said: 'There was no attempt to show the value of the use of or injury to the machinery, equipment, appliances or material by the two appellants, except the 4500 feet of expansion joints which became a part of the improvement, and the claim therefor was properly allowed.' There was nothing in the decision of the Appellate Court or in the decision of this court in conflict with the Alexander Lumber Co. case, but it is probably true that in com-

455

menting on the construction of section 23 the court used some language which cast doubt upon the construction given that section in the Alexander Lumber Co. case. Such language was not necessary to a decision in the McMillan case, for it was not proved in that case that the materials and machinery furnished the contractor were consumed in constructing the improvement, nor was it proved there was any injury to the machinery and tools or what the value of their use was in making the improvement. In the McMillan case the court correctly held that the purchase price of machinery and equipment was not lienable under section 23, and said: 'It would seem that generally it would be presumed that a contractor is prepared with machinery and necessary appliances to do his work and that such items are furnished upon his own credit and as a part of his working equipment and business and are not furnished upon the implied credit of the public.' "

Again, in Standard Oil Co. of Indiana v. Vanderboom, supra, the claim was for gasoline, oil and grease necessary for the use of the contractors in constructing the improvement and were entirely consumed. The Supreme Court held that section 23 was intended to, and does, give the party who furnishes materials, which are necessarily consumed in making the improvement, a lien on money due the contractors from the State, and found that the materials furnished, namely, gasoline, oil and grease were necessary to enable the contractors to do the work and were entirely used up and consumed by the contractors in making the improvement. In none of the cases which have been called to our attention has the court sustained a lien under section 23 for damages to machinery caused by accident or negligence of the operator. The cases do support the right of a lessor of machinery or equipment to a lien for the value of the use of the equipment while on rental and possibly for injury to rented

456

equipment. Such a rule, however, does not aid the plaintiff in this case because there were no injuries to anything which the plaintiff supplied. The plaintiff did not make a claim for the use of the value of the repaired machine because he did not own the machine when the accident occurred. The facts in the instant case are far different than the hypothetical case which the McMillan court had in mind when it made the statement in question.

As we read the Illinois cases construing section 23 of the lien act none specifically support plaintiff's contention that major repairs occasioned by an accident are lienable. None of the Illinois cases involve a claim for a lien due to damages to machinery occasioned by accident or negligence. However, the reasoning in cases from other jurisdictions is somewhat helpful, as will be pointed out in a discussion on the second point raised in this case.

 We conclude that section 23 of the lien act does not warrant a lien against the public fund for major repairs to equipment owned by the contractor, occasioned by accident or by negligence of the operator. We believe that a lien may be established for costs of repair of minor items on machinery which were necessarily consumed in making the improvement. To give to section 23 of the lien act a construction which would allow a lien for major repairs to machinery occasioned by accident or carelessness of the employees of the contractor would be stretching the language employed by the legislature. The contractor who agrees to construct a public improvement and uses his own machinery does so on his own credit and not the credit of the public. It cannot be said that this crane was totally consumed in building the improvement. Furthermore, the repair work was not totally consumed in building the improvement. The machine was sold for $22,000 and will be used in future jobs. The fund contemplated by section 23 of the lien act is not an accident

or indemnity fund, and the statutes, we feel, were never meant to include equipment damaged through accident or negligence of an employee.

The case of D. D. Kennedy, Inc. v. Lake Petersburg Ass'n, 54 Ill App2d 85, 203 NE2d 145, was called to the court's attention by defendants. Inasmuch as sections 1 and 21 of the lien act were held to be applicable in that case we do not consider it helpful to a decision in this case.

In the cases of McMillan v. Joseph P. Casey Co., supra, and Standard Oil Co. of Indiana v. Vanderboom, supra, the Supreme Court in commenting on the law in both cases made the statement that there was no attempt to show the value of injury to machinery, etc. Injury or damage to machinery is not specifically mentioned in section 23. That language, as we see it, could only have been taken from the Alexander case where the court merely held that it was claimed that a small part of the claim of appellant Gould was for work in repairing machinery and tools. But as pointed out heretofore, the trial court in the Alexander case had found that the claims were for material and labor supplied the contractor and that the Supreme Court in the Alexander case affirmed the decree of the trial court without deciding whether the claim was for repairing machinery and tools. Neither the McMillan case, supra, nor the Standard Oil Co. of Indiana case, supra, involved damage or injury to machinery or tools, and a decision covering such point was not made in either of those cases.

In the McMillan case (McMillan v. Joseph P. Casey Co., 311 Ill 584, 143 NE 468), the court said on page 590: "There was no attempt to show the value of the use of or injury to the machinery, equipment, appliances or material by the two appellants, . . . ." The last quoted statement, no doubt, was made in reference to the rights of the owner of rental equipment in respect to injuries to such equipment when on rental; and even if it were the

law that the lessor of equipment is entitled to a lien for the injury to his equipment in addition to the amount of his rental or use value, the plaintiff here would not benefit thereby. There is no evidence that there were any injuries to anything plaintiff supplied. The parts supplied by the plaintiff to the general contractor and the plaintiff's labor incorporating them into the machine were not consumed or injured in the contractor's performance of his contract. By the material and labor furnished by the plaintiff the contractor's crane was merely restored to the same or better condition than it was prior to the accident. The plaintiff does not seek the value of the use of such repairs, nor does he claim that there was any damage or injury thereto. The plaintiff was not the owner of the crane or the owner of the damaged parts, and plaintiff's property neither sustained nor incurred any injuries or damage from the accident, and therefore if the foregoing statement appearing in the McMillan case, supra, is the rule, which the plaintiff claims it to be, it has no application to the facts in the case at bar.

The second point raised by the defendants is that the plaintiff is not entitled to recover upon the statutory performance and payment bond of Aetna Casualty & Surety Company. The bond sued upon bears the following condition:

> "Now, if the said Arthur J. Siegel, . . . shall in all things stand to, abide by, and well and truly keep and perform all of the covenants, conditions and agreements mentioned and contained in said contract . . . including the covenant that the said Arthur J. Siegel . . . shall be responsible for all liabilities incurred for labor furnished or materials used in the prosecution of the work provided for in said contract, and shall promptly make payment to all persons supplying him labor or materials in the prosecution of said work, then the above obligation to be void, otherwise to remain in full force and effect."

459

Paragraphs 15 and 16 of chap 29, (Ill Rev Stats 1961, c 29, pars 15, 16) provide in part as follows:

"15. All officials, boards, commissions or agents of this State, or of any political subdivision thereof . . . shall require every contractor for such work to furnish, supply and deliver a bond . . . conditioned for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise.

"Each such bond shall be deemed to contain the following provisions whether such provisions be inserted in such bond or not:

" 'The principal and sureties on this bond agree to pay all persons . . . having contracts with the principal . . . all just claims due them under the provisions of such contracts for labor performed or materials furnished, in the performance of the contract on account of which this bond is given . . . .'

"16. . . . Every person furnishing material or performing labor . . . for any contractor . . . shall have the right to sue on such bond . . . ."

The plaintiff argues that section 23 of the lien act (Ill Rev Stats 1961, c 82, § 23) provides that any person who shall furnish "material, apparatus, fixtures, machinery or labor to any contractor" having a contract for a public improvement shall have a lien upon the money, bonds or warrants due or to become due the contractor; that a comparison of section 23 with paragraph 15 of chapter 29 relating to public contracts shows that both used the identical words "material and labor"; and that while in paragraph 15 of chapter 29 the words "apparatus, fixtures and machinery" are not present as in the case of section 23 of the lien act, it is, nevertheless, of no consequence so far as the issue here is concerned.

460

Plaintiff relies on the case of Illinois State Toll Highway Commission v. M. J. Boyle & Co., 38 Ill App2d 38, 186 NE2d 390, and relies upon a statement by the court on page 51 as follows:

"In this opinion we are not attempting to interpret or construe the statute. Once the principals and sureties have given a bond which satisfies the minimum requirements provided for in the statute the statute in a sense becomes functus officio. There is nothing to prevent the parties from entering into a contract and bond which go far beyond the statutory provisions, where they are entered into by parties competent to contract and they are not prohibited by law. The rights of the plaintiff here depend upon the meaning of the contract and bond. The statutory provisions concerning mechanic's liens are not controlling in the present case. The plaintiff is not seeking to enforce a lien but is pursuing an entirely independent remedy."

In the Illinois State Toll Highway Commission case, supra, the bond being construed went much further than the statute required, and provided that prevailing wages for the work performed in accordance with the contract must be paid, together with money due not only for labor and material, as required in the statute, but also for apparatus, fixtures or machinery and transportation with respect thereto, which were furnished for the purpose of performing such work. The court pointed out that the question was whether, when a performance bond such as the one in that case is given, which goes far beyond the statutory provisions, recovery can be had against the principals and sureties in a suit on such bond. The court concluded in that case that because the bond was a voluntary bond given by the principals and sureties over and beyond the statutory requirements, the plaintiff was en-

461

titled to recover from the surety for items for which the supplier could not have established a lien under section 23 of the lien act.

It therefore becomes necessary for us to determine whether the bond in this case went beyond or covered matters which would not have been lienable under section 23.

In the Illinois State Toll Highway Commission case, supra, the bond, after stating the substance of the contract between the principals and the Illinois State Toll Highway Commission, provided that the principals pay not less than the prevailing wages for the work to be performed in accordance with such contract, and also pay "all sums of money due for any labor, materials, apparatus, fixtures or machinery, and transportation with respect thereto, furnished to such Principals for the purpose of performing such work in accordance with the provisions of the contract and any and all duly authorized additions, alterations, cancellations and deductions which may be hereafter made pursuant to said contract . . . ." An additional provision of the bond provided that the sureties have "agreed that this bond shall inure to the benefit of any person, firm, company or corporation to whom any money may be due from the Principals, any subcontractor, or other person for any *such* labor, materials, apparatus, fixtures or machinery, and transportation with respect thereto, so furnished and that suit may be maintained on such bond by any such person, firm, company or corporation for the recovery of any such money." (Emphasis supplied.)

██ ██ It can be readily seen that the bond given in the Illinois State Toll Highway Commission case differs materially from the provisions of the bond in the instant case. The bond in the case at bar is conditioned that the contractor shall perform the covenants of the contract ". . . including the covenant that the said Arthur J.

462

Siegel, doing business as aforesaid, shall be responsible for all liabilities incurred for labor furnished or materials used *in the prosecution of the work* provided for in said contract, and shall promptly make payment to all persons supplying him labor or materials *in the prosecution of said work*." (Emphasis supplied.) In our opinion the condition of the bond is no broader than the language used in section 23 of the lien act. The repair parts and the labor connected with the repair of the crane were not "used in the prosecution of the work provided for in said contract," in that they were not consumed in the project. It is the contractor's responsibility to maintain his equipment in a workable condition to the end that the job may be done expeditiously and within the contract price. Because of the negligence of the operator of the crane, a delay was, no doubt, caused in the prosecution of the work.

While this court realizes that this case must be decided upon Illinois law both as to the lien against the fund and the liability of the surety, nevertheless, cases from other jurisdictions are important, not only for their direct holdings, but for the very persuasive reasoning which dictated the decisions.

In the case of Clifton v. Norden, 178 Minn 288, 226 NW 940, suit was brought on a public contractor's payment bond for labor and materials in installing new main bearings, pistons, drive shafts and many other major repair items in a fleet of trucks owned by the contractor and used in a road building contract. The repairs were made during the course of the work and there was no proof that any of the parts were worn out on the job. The Supreme Court of Minnesota denied recovery and said the question was whether the words "work . . . tool, machinery or materials" furnished under or for the purpose of such contract or for its completion, in accordance with its terms, would cover the claims made by the plaintiff. The court on page 941 said:

463

"Literally, in its inclusion of equipment and machinery, the statute reaches the cost of new articles purchased by a contractor for use and used on a given work, even though they become part of his permanent and general equipment and will serve on other and perhaps many other contracts as well. But to conclude that the language was meant so literally would lead at once into absurdity. Plainly it was not intended that sureties for a $25,000 contract may be liable for the cost of a steam shovel outfit purchased, to be first used on that job, at a cost of possibly twice the contract price. So, as frequently happens, the language must be restricted within the reasonable limits easily found when applied to its subject-matter.

"The law was not intended to permit a contractor to go onto a bonded job with a run-down outfit and have it rebuilt at the expense of his sureties. Public contracts require the contractors to furnish their own equipment. . . . Moreover, they demand, expressly or by direct implication, that his equipment be maintained by the contractor in a workable condition to the end that the job may be done expeditiously and within the contract price. . . . So also if a truck break down on the job beyond possibility of repair or be completely wrecked and be replaced by a new one which will serve other jobs as well, the cost of the new machine is not within the bond. The same must be true of any part of a machine which, through use or casualty, must be replaced. If it is such that it will normally not only serve the job in hand but others as well, its cost is not covered."

In Madison Lumber Co. v. Crane Service Co., Inc., 129 So 189, 14 La App 363, the court held that the payment bond of a contractor on a public job was not liable for lumber furnished to repair the contractor's pile driver

which was damaged by the negligent operation of the driver. The court said at page 189:

> "Our attention has, however, been called to the fact that the repairs made were not necessitated by ordinary use, or by wear and tear, but were required because of the fact that the pile driver, through carelessness of the employees of the subcontractor, was allowed to turn over, with the result that it sustained damage . . . ."

The court stated that the statutes never meant to include equipment damaged by the negligence of an employee.

The case of Alpena v. Title Guaranty & Surety Co., 159 Mich 329, 123 NW 1126, involved repairs to the contractor's equipment resulting from an accident. The plaintiff sued for the value of labor in raising contractor's dredge which sank while the contractor was using it in performing the contract work. The court said at page 334: "A very cogent reason for not extending the protection of the bond to that class to which the use plaintiff herein belongs is that to do so would tend to impair, if not absolutely destroy, the value of the bond to those who, in fact, did perform labor or furnish materials 'in the erection, repairing, or ornamenting of such building, works, or improvements.' "

Because of the foregoing, the decree of the trial court decreeing a section 23 lien upon money, bonds or warrants in the hands of the Board of Education of the City of Chicago, and entering judgment in the sum of $6,732.-54 against defendant Aetna Casualty & Surety Company upon the statutory performance and payment bond, is reversed. Inasmuch as Arthur J. Siegel, d/b/a Seco Construction Company, did not appeal, and probably had no defense to the action, the decree is sustained insofar as it entered judgment for $6,732.54 against Arthur J. Siegel d/b/a Seco Construction Company. The decree further

465

directed that all costs, stenographic and master's fees be adjudged against the defendants. This part of the decree is reversed insofar as it relates to Aetna Casualty & Surety Company, a corporation, and Board of Education of the City of Chicago, a body politic.

Reversed in part and affirmed in part.

SCHWARTZ and DEMPSEY, JJ., concur.