393 F.2d 187
 The PREPAKT CONCRETE COMPANY, Plaintiff-Appellant and Cross-Appellee,
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Continental Illinois National Bank and Trust Company of Chicago, and Goethe Building Corporation, Defendants-Appellees and Cross-Appellants.
 No. 16187.
 No. 16188.
 United States Court of Appeals Seventh Circuit.
 April 1, 1968.
 
 John H. Bishop, John M. Falasz, Chicago, Ill., Leslie Hynes, New York City, for Prepakt Concrete Co.
 John P. Hampton, Roger D. Doten, Edward P. McNeela, Chicago, Ill., for defendants-appellees and cross-appellants, Dent, Hampton & Doten, Chicago, Ill., of counsel.
 Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 This suit by Prepakt Concrete Compeny arises from the construction of a high-rise apartment building on property owned by Continental Illinois National Bank as trustee. Goethe Building Corporation was the prime contractor, and Mid-Continent Construction Company, Inc., its subcontractor. Prepakt was Mid-Continent's second tier subcontractor. Fidelity and Deposit Company of Maryland furnished a labor and material payment bond for Mid-Continent.
 
 
 2
 Prepakt was not paid for the construction work which it performed on the apartment building. As a result, it sued Mid-Continent on its contract and Fidelity on its bond; and also sought to foreclose Prepakt's mechanics lien against Continental and Goethe. Prepakt sought to recover $65,054.90 from each defendant. Goethe and Continental counterclaimed against Prepakt for damages for negligent performance of Prepakt's work. The counterclaim was settled during the trial and was dismissed. The district court, without a jury, gave judgment for $49,993.79 against Mid-Continent and Fidelity, and for $49,509.68[1] against Continental and Goethe. Prepakt appeals from the judgments in its favor, and Continental, Goethe and Fidelity cross-appeal. Mid-Continent has not appealed from the judgment below. We vacate the judgments and remand for entry of corrected judgments.
 
 
 3
 Goethe's subcontract with Mid-Continent required the latter to furnish labor, material and equipment for excavation and foundation substructure work. Under the sub-subcontract between Mid-Continent and Prepakt, Prepakt undertook to furnish labor and material for the "installation of exterior concrete pile walls." Prepakt was to drive concrete pilings into the ground so that they would abut and provide reasonably leak-proof walls about the perimeter of the basement and subbasement. Prepakt was required to do any grouting needed to leak-seal the pile walls. It was to be paid for the grouting work unless the work was made necessary by its negligence.
 
 
 4
 Under the subcontract Mid-Continent agreed to pay Prepakt $45.00 per hour after Prepakt moved its men and equipment onto the site for any time during which Prepakt was unable to work because of circumstances beyond its control. Prepakt moved onto the site on March 23, 1961, at Mid-Continent's direction, but because Mid-Continent delayed performance of preparatory work, Prepakt was unable to begin its work until May 1, 1961.
 
 
 5
 About October 21, 1961, Goethe terminated the subcontract with Mid-Continent because of the latter's default. At this time Prepakt had completed installation of the pilings but had not done any grouting. After Mid-Continent's contract was terminated Goethe employed another contractor to perform the excavation work that Mid-Continent was to have done. During this excavation it was discovered that some of the piles installed by Prepakt were not plumb or in alignment and that water and soil had entered the basement and sub-basement through the pilings. Goethe requested Prepakt to supply the grouting needed to make the pilings reasonably leak-proof. Prepakt refused and Goethe employed another contractor to do the necessary grouting at a cost of $15,061.11.
 
 
 6
 On August 25, 1961, Prepakt filed a claim for a lien under the Illinois Mechanics Lien Statute, Chapter 82 ILL. REV.STAT.1967, against Continental on funds in its hands, due or to become due Goethe under the prime contract. Thereafter Continental and Goethe paid out money in excess of the amount of the lien of $65,054.90 to various subcontractors and suppliers.
 
 
 7
 On January 5, 1967, the district court entered findings of fact and conclusions of law in Prepakt's suit against Mid-Continent, Fidelity, Goethe and Continental, and on February 10 entered judgment in Prepakt's favor against Mid-Continent and Fidelity for the contract price of $65,054.90 less $15,061.11, the cost of the grouting, or $49,993.79; and against Continental and Goethe for the contract price less the cost of grouting and less $484.11, a bond premium, or $49,509.68. The contract price of $65,054.90, and impliedly Prepakt's recovery, includes $12,262.50 in delay costs caused by Mid-Continent's failure to prepare the job site on time. The court dismissed the counterclaim of Goethe and Continental on the basis of the settlement under which Prepakt paid $10,000 to the counterclaimants.
 
 
 8
 The main contention of Prepakt is that the cost of the grouting paid by Goethe, for the work which Prepakt refused to do, should not have been set off against Prepakt's judgment against Goethe and Continental. Prepakt argues that the counterclaimants sought to recover the cost of grouting in their counterclaim against Prepakt; and that since Prepakt paid $10,000 in settlement of the counterclaim, the offset against the amount claimed by Prepakt against Goethe and Continental should have been limited to the sum of the $10,000 settlement figure plus the $484.11 bond premium. Prepakt accordingly insists that it is entitled to judgment in the sum of $54,570.79.
 
 
 9
 Prepakt filed a motion to amend the district court's original findings and conclusions. In this motion it sought to limit the offset from its judgments against Continental and Goethe to the $10,000 it paid in settlement of the counterclaim. The court denied the request and we find no error in this ruling.
 
 
 10
 The court found, and the record shows, that the $10,000 settlement concerned only the counterclaim issues based on negligence and did not resolve any issue in Prepakt's contract suit; that Prepakt had offered no proof of the items of damage involved in the settlement of the counterclaim; and that the request for credit on account of the $10,000 payment was not made during the trial but was presented only on the post-trial motion to amend. These findings are not challenged. We think the court properly concluded, upon the findings above mentioned, that the settlement should receive no consideration in arriving at the judgments entered by the court. The record shows that in discussing his understanding of the settlement, counsel for Prepakt stated that it was not to affect the result in the contract suit. Prepakt cannot seek relief from this court because subsequent events make it appear that it would have been wiser to refuse settlement and risk a trial on the merits.
 
 
 11
 In its motion to amend Prepakt also claimed interest on the amounts "found to be due and owing by the various defendants" from July 13, 1961, the date upon which it removed its personnel and equipment from the job site after finishing the installation of the piles. The court denied interest and Prepakt claims this was error.
 
 
 12
 We think the court was correct in refusing interest on the contract claim. It is not disputed that the subcontract came within the "or other instrument of writing" clause in Sec. 2 of Chapter 74, ILL.REV.STAT.1967, providing interest at 5% for creditors for all money due on such instruments, among others. Under Illinois decisions, however, such interest is only recoverable when the amount due is liquidated or readily ascertainable. Standard Oil Co. of Indiana v. Daniel Burkhartsmeier Co-op. Co., 333 Ill.App. 338, 77 N.E.2d 526. The amounts due Prepakt when it left the building site were not reasonably ascertainable since it had not completely performed its contract.
 
 
 13
 We think, however, that Prepakt was entitled to interest on the amount found due it under its claim of lien against Continental and Goethe. The court erred in refusing to allow this interest. Under Sec. 21, Chapter 82, ILL.REV.STAT.1967, persons furnishing material or performing services for a contractor directly are entitled to interest for the value thereof from the time payment became due. Sec. 22 covers the lien of second tier subcontractors and no provision is made for interest. Fidelity argues that since the mechanics lien statutes are a derogation of common law they must be construed strictly. It then contends that the provision of Sec. 22 that sub-subcontractors may enforce their liens in the same manner "as is herein provided for the enforcement of liens by subcontractors" cannot be read as meaning that the Sec. 22 lien can be enforced to the same "extent" as under Sec. 21. Fidelity cites no cases for its contention. It is our view that no good reason appears for distinguishing between subcontractors and sub-subcontractors in the allowance of interest on the amount of money due for labor and material. Sub-subcontractors could put to use the money due in the same way as subcontractors, if it was paid when due.
 
 
 16188
 
 
 14
 Defendants on their cross-appeal contend that the allowance of $12,262.50 in payment for waiting time is erroneous since time is not "labor and materials" covered by Fidelity's bond or by a mechanics lien. The contention is based on a narrow view. Prepakt's personnel and equipment were moved on the job site at Mid-Continent's request. The possibility of waiting time while Prepakt was at the job site, but was unable to work, was contemplated by Mid-Continent and Prepakt and they agreed upon an hourly rate to be paid during waiting time. We agree with Prepakt that the personnel and equipment was being furnished Mid-Continent while it stood ready on the site, and the value of that time was part of the labor cost which ultimately produced the building under construction.
 
 
 15
 The defendants also argue that the bond premium of $484.11 is not "labor and material" as covered by Fidelity's bond. No Illinois cases on this precise point have been cited to us, but we can see no basis for holding that a bond premium is either a material or labor cost. We hold that Fidelity is not liable for the amount of the premium under its labor and material bond. See generally Hoier v. Kaplan, 313 Ill. 448, 145 N.E. 243; Arrow Contractors Equipment Co. v. Siegel, 68 Ill.App.2d 447, 216 N.E.2d 181.
 
 
 16
 The court found that on June 23, 1961, at Mid-Continent's request, Prepakt partially waived its lien in contemplation of receiving a partial payment of $25,000; that the waiver was delivered to Goethe and Continental June 26 with a letter explaining that the $25,000 had not been paid Prepakt; and that Goethe paid Mid-Continent $30,000, by a check dated June 29, 1961, after receiving the waiver and letter. Neither Mid-Continent, Goethe, Continental nor Fidelity made any payments to Prepakt. The waiver was effective to waive the lien "on the premises" prior to June 23, 1961, but did not purport to release the statutory lien on moneys due under the contract. The court concluded that the waiver did not release funds in Continental's hands due Goethe nor discharge Fidelity from liability to the extent of the waiver.
 
 
 17
 Fidelity argues that the release of $25,000 was motivated by reliance on the waiver signed by Prepakt and deprived Fidelity of that amount which would otherwise have been available to mitigate its losses. Goethe and Continental argue that they were also deprived of money that would have been available to satisfy Prepakt's lien. When Goethe paid the $30,000 it knew Prepakt had not been paid and that the waiver's statement that Prepakt had received the $25,000 was not true. It also knew that the waiver was not an effective release of the lien on the funds due under the contract. We think Goethe took the risk that Mid-Continent might not pay Prepakt and should have looked to the proper application of the money it paid to Mid-Continent. We cannot agree with Fidelity that Prepakt should be made to bear the risk that the waiver might result in Mid-Continent's failure to pay it the $25,000. The district court's conclusion was not error.
 
 
 18
 Defendants argue that Prepakt's recovery should be held to nominal damages because the value of the work done was not adequately proved below. The court found that Prepakt had substantially performed its contract except for the grouting, and we have not been persuaded that the method used by the court below in calculating the value of the work was improper under these circumstances. City of Chicago v. Sexton, 115 Ill. 230, 2 N.E. 263; White v. Gillman, 43 Ill. 502; Spiro v. Cable, 248 Ill.App. 343; South Beloit Electric Co. v. Lar Gar Enterprises, Inc., Ill.App., 224 N.E.2d 306.
 
 
 19
 The work done by Prepakt was accepted by Goethe, except that Goethe demanded that Prepakt perform necessary grouting. Prepakt refused presumably because it considered that its negligence had not made the grouting necessary and that it had no contractual duty to perform further, since Mid-Continent, the only party with whom it had a contractual relationship, had been terminated by Goethe. Fidelity argues that the proof shows piles out of plumb, not reasonably waterproof, and consequently failure to perform. However, the district court found that after the grouting was done nothing further was needed to make the pilings reasonably leakproof.
 
 
 20
 There was testimony by witnesses for Prepakt and for Fidelity with respect to the performance by Prepakt of the work it undertook. The district court saw and heard the witnesses and could have reasonably concluded that Prepakt substantially performed its work under its contract except to the extent of the grouting.
 
 
 21
 It is finally argued by Fidelity that there is no evidence that any money was owed by Continental or Goethe to Mid-Continent at the time the claim for lien was filed and that accordingly there was no fund to which the lien could attach. We see no merit to this claim because the district court found that after Prepakt filed its lien Goethe and Continental made payments to other subcontractors in excess of the amount claimed in the lien. Goethe and Continental are not to be credited with these payments in so far as they prejudiced the lien of Prepakt. Consequently the payments did not diminish the amount in Continental's hands subject to the claim of Prepakt. Morehouse v. Moulding et al., 74 Ill. 322.
 
 
 22
 The court erred in failing to award interest on the judgments against Continental and Goethe from July 13, 1961, and in including the bond premium in the judgment against Fidelity. The judgments against Continental and Goethe should be increased by adding the interest, and the judgment against Fidelity should be reduced by $484.11, the amount of the bond premium. The three judgments appealed from are correct in all other respects. The judgments below are vacated and the case is remanded for the entry of judgments in accordance with this opinion.
 
 
 23
 Judgments vacated and causes remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 The difference in the amounts of the judgments is the cost of a bond premium which the court found was a "non-lienable item."