C. S. LEWIS, INC., Plaintiff-Counterdefendant-Appellee, *v.* CABOT CORPORATION, Defendant-Counterdefendant-Appellee.—(SHOEMAKER ELECTRIC COMPANY, Defendant-Counterplaintiff-Appellant; MORRIS CONSTRUCTION, INC., Defendant-Appellant; HOKE CONSTRUCTION COMPANY, INC., Defendant-Counterplaintiff-Appellant; GREEN BAY X-RAY SERVICE, INC., Defendant-Appellant; D & R WELDING SUPPLY CO. *et al.*, Defendants.)

Fourth District   Nos. 15936, 15948, 15949, 16058 cons.

Opinion filed June 25, 1980.—Rehearing denied August 6, 1980.

Frank W. Lincoln, of Nichols, Jones, McCown & Lincoln, of Tuscola, for appellants Shoemaker Electric Company and Morris Construction, Inc.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellant Hoke Construction Company, Inc.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellant Green Bay X-Ray Service, Inc.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Lemna & Moore, of Tuscola, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

These consolidated cases involve appeals by various subcontractors from orders of the circuit court of Douglas County denying their counterclaims for mechanic's liens.

The action began on December 1, 1975, when plaintiff, C. S. Lewis, Inc. (Lewis), filed a complaint to foreclose a mechanic's lien against property owned by defendant, Cabot Corporation (Cabot). Lewis, as general contractor, had supplied, assembled and erected three storage tanks for Cabot on the above property. Among those named as defendants who had or claimed to have some interest in the above property were the appellants, Shoemaker Electric Company (Shoemaker), Morris Construction, Inc. (Morris), Hoke Construction Company, Inc. (Hoke), and Green Bay X-Ray Service, Inc. (Green Bay). Each appellant filed an answer and counterclaim, alleging that it had furnished various materials, labor, supplies, equipment or services to Lewis in connection with the Cabot job. On November 2, 1979, the trial court entered individual orders as to each appellant granting a money judgment against Lewis, but denying the requested mechanic's lien because the materials, labor, etc., had not been used in or incorporated into the structure. Each order contained a finding pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) that no just reason existed to delay enforcement or appeal.

First, we must address the issue of whether Green Bay's answer and counterclaim were timely filed. Section 28 of the Mechanic's Lien Act (Ill. Rev. Stat. 1979, ch. 82, par. 28) allows a subcontractor to "file a claim for lien or file a complaint and enforce such lien within the same limits as to time and in such other manner" as provided for a contractor. Section 9 of the Act (Ill. Rev. Stat. 1979, ch. 82, par. 9) provides in part, "Such suit shall be commenced or counterclaim filed within two years after the completion of the contract." Green Bay stipulated that it had completed the work for which it was claiming a lien on August 5, 1975, and thus had until August 5, 1977, to file suit or counterclaim. Green Bay was named a

defendant in Lewis' suit to foreclose its mechanic's lien, and Green Bay filed its entry of appearance on December 29, 1975. However, Green Bay did not file its answer and counterclaim until November 2, 1979, more than two years after the expiration of the statutory period of limitations.

The case of *Galloy v. Sparrow* (1911), 166 Ill. App. 197, involved a situation identical to that here, except that at that time, a subcontractor was required to file his petition or commence his suit within four months from the date final payment became due. T. M. Tobin Bros., a subcontractor, had been named a defendant in a mechanic's lien suit filed by another subcontractor. Tobin Bros. filed an entry of appearance in the suit within the four-month period of limitations, but did not file its answer making the necessary allegations until after the period had expired. The trial court ruled that Tobin Bros. had not preserved its rights as a lien claimant and the appellate court affirmed stating that the mere appearance by Tobin Bros. did not constitute " 'filing a petition' or 'commencing a suit.' " 166 Ill. App. 197, 201.

Green Bay contends that the late filing of its answer and counterclaim was authorized by sections 46(1) and (2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 46(1) and (2)) providing relief to claimants which was not available at the time of *Galloy*. Subsection 1 permits amendment to "any process, pleading, bill of particulars or proceedings" upon "just and reasonable terms." Subsection 2 provides that a cause of action stated in an amended pleading cannot be defeated by any time limitation for filing the cause of action if the time limitation had not expired at the time of filing "the original pleading" and the original and amended pleadings show that the cause of action set forth in the amended pleading "grew out of the same transaction or occurrence set up in the original pleading."

Here, the only document filed by Green Bay within the two-year period of limitations was its entry of appearance. Even if the entry of appearance be deemed a pleading, it did not set forth or refer to any transaction or occurrence. It was not a sufficient prior pleading to enable Green Bay to avoid the time limitations of section 9 of the Mechanic's Lien Act by invoking section 46(2) of the Civil Practice Act. Thus, this case differs from *Douglas Lumber Co. v. Chicago Home for Incurables* (1942), 380 Ill. 87, 43 N.E.2d 535, where an original complaint to foreclose a mechanic's lien was held, under legislation similar to section 46(2), to be a sufficient prior pleading to serve as the basis for filing an otherwise tardy amendment seeking recovery for additional materials not mentioned in the prior pleading.

Green Bay maintains that Lewis' complaint should be deemed "the original pleading" within the meaning of section 46(2). However, we interpret that phrase to refer to a pleading which is later sought to be

amended to properly set forth the claim at issue. We cannot construe Green Bay's counterclaim to be an amendment to Lewis' complaint. Moreover, Lewis' complaint merely alleges that Green Bay and others "have, or claim to have, some interest in the above-described [as set forth in the complaint] premises, as lien creditors, or otherwise." Thus, that complaint did not allege that Green Bay's interest necessarily arose out of the same "transaction or occurrence" as that set forth in Green Bay's counterclaim.

■■ Green Bay's claim was barred for not having been filed within the time requirements of section 9. Its dismissal by the trial court was proper.

Now we must address the much more difficult question of whether the other appellants were entitled to a mechanic's lien for the services, labor, material and equipment they furnished to Lewis in connection with the Cabot job.

In *Hoier v. Kaplan* (1924), 313 Ill. 448, 145 N.E. 243, a contractor was denied a mechanic's lien for labor in maintaining heat during the winter months in a building under construction. On appeal, the supreme court recognized that the labor was necessary to furnish heat to preserve the interior of the building and to maintain the workers' comfort, but the court stated that necessity is not the test of whether a lien will attach under the Act. Rather, the question is whether the labor was performed in constructing the building or whether it was performed in "one of the processes of construction as a means to assist in the erection of the building." 313 Ill. 448, 453, 145 N.E. 243, 245.

Under the theory of *Hoier*, except for items specifically enumerated in the Act, in order to be lienable, materials must be used in or incorporated into the structure or improvement, and labor or services must be performed in the actual construction.

Appellants argue that the instant case is distinguishable from *Hoier* because the claimant in *Hoier* was a contractor whose claim is governed by section 1 of the Act, whereas the appellants here are subcontractors whose claims are governed by section 21. Section 21 provides in part,

> "Subject to the provisions of section 5 [dealing with notice to the owner], every mechanic, worker or other person who shall furnish any materials, apparatus, machinery or fixtures, or furnish or perform services or labor for the contractor, or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work where concrete, cement or like material is used in whole or in part, shall be known under this act as a sub-contractor, and shall have a lien for the value thereof * * *." (Ill. Rev. Stat. 1979, ch. 82, par. 21.)

Appellants argue that this statute does not require that the materials,

machinery, services or labor be incorporated into and become a part of the building or improvement, but rather requires only that the items be furnished to the contractor.

In *Rittenhouse & Embree Co. v. F. E. Brown & Co.* (1912), 254 Ill. 549, 98 N.E. 971, the supreme court stated that under section 21 a subcontractor has a lien as broad as that of a contractor. There, a subcontractor was denied a mechanic's lien for lumber furnished to the contractor to be used for "false work," the molds and forms into which concrete is poured, because the lumber had not been incorporated into the building nor had that been the intention when the lumber was furnished. The Mechanic's Lien Act now contains an express provision for that type of materials.

More recently, in *D. D. Kennedy, Inc. v. Lake Petersburg Association* (1964), 54 Ill. App. 2d 85, 203 N.E.2d 145, this court denied a subcontractor's lien for the rental of earthmoving equipment and the services of a man to start the same.

> "The items of machinery and apparatus here concerned were, it appears from the amended complaint, used only in the process of construction and as a means to assist in the improvement. They were not used in the improvement as such. They were not used in such a manner as to become attached to or form a part of the real estate. They did not become fixtures. They did not enter into the permanent construction of the improvement and did not become a part thereof." 54 Ill. App. 2d 85, 109-10, 203 N.E.2d 145, 156.

Given the above decisions, we deem two items set forth in the various counterclaims nevertheless to give rise to mechanic's liens under section 21.

■■ First, Hoke is entitled to a lien for the labor used in removing cement from the tank legs before they were installed. This work was done on the site and the product was incorporated into the structure. This work would be comparable to that of a carpenter, on the job site, cutting lumber to the proper length needed for the structure.

■■ Secondly, Morris furnished Lewis with a crane and operator which was used to hoist sheet metal plates into place and hold them while Lewis' employees welded the plates permanently to the structure. While the transaction was described by the parties as a rental and the operators of the crane may have been loaned servants, the substance of the transaction was that the operators were engaged in directly constructing the building. The situation differs from that in *D. D. Kennedy, Inc.*, where the rented equipment was operated by the employees of the contractor and the only employees of the claimant sent to the site were there not to operate the equipment or to engage directly in the construction but to care for the equipment. Here, the operators were directly engaged in the erection of

the tanks. Morris was entitled to a lien to the extent of charges for the operators.

We find that the other items listed by appellants in their respective counterclaims do not give rise to a mechanic's lien. Hoke claimed a mechanic's lien for the labor and materials in furnishing and delivering ice water to the job site; the rental of a pickup truck, jackhammers and an air compressor used in removing the cement from the tank legs; the rental of equipment and the labor to unload a shipment of steel used in the construction; the rental of equipment, materials and labor to place rock around the job site to make it more accessible; and the rental, repair, and pick-up of welding machinery.

Shoemaker sought a lien for labor and materials in providing temporary lighting for the job site and for fabricating and installing electrical service panels which provided electricity on the job site; and for the repair of an electrical hoist used by Lewis.

Morris requested a mechanic's lien for the rental of a field office to Lewis, and for the labor and materials in fabricating a "test coupon" used to test the welders' skill.

■■ Under the language of the Act as interpreted in the above cases, none of these items can give rise to a mechanic's lien because the materials and machinery were not incorporated into the structure and the labor was not performed in the actual construction of the tanks.

The record indicates that a clear separation can be made between the items we deem to be lienable and the other nonlienable items. Hoke is entitled to a lien of $900.50 plus interest for the labor in removing cement from the tank legs, and Morris is entitled to a lien in the amount of $5481.90 plus interest for the operators' labor involved in holding the metal plates as they were welded to the tanks.

Accordingly, we reverse the judgments of the circuit court of Douglas County to the extent that they deny a mechanic's lien for the above items, and remand this cause of action for further proceedings. All other portions of those judgments are affirmed.

Affirmed in part, reversed in part and remanded.

TRAPP and CRAVEN, JJ., concur.