## In Re TRI–COUNTY MATERIALS, INC., Debtor.

### No. 90–1041.

United States District Court, C.D. Illinois.

April 13, 1990.

Donald Knuckey, Henry, Ill., for debtor.

James Andreoni, Peru, Ill., for Ladd Const.

Stephen A. Kouri, Peoria, Ill., for First State Bank.

Gerald M. Hunter, Oglesby, Ill., for KMB, Inc.

## ORDER

MIHM, District Judge.

Pending before the Court is an appeal and cross-appeal of the bankruptcy court's decision that while Appellant KMB, Inc. did not have a valid security interest in funds owing to the Debtor, KMB did have a valid mechanics lien on those funds. For the reasons stated below, the bankruptcy court is affirmed.

## FACTS

■ Tri–County Materials, the Debtor below, operated a sand and gravel pit. Ladd Construction Company was a general contractor which had a contract with the State of Illinois to construct a portion of Interstate 39. Ladd and Tri–County entered into a contract according to which Tri–County would supply Ladd with 100,000 tons of sand and gravel at $2.50 per ton. In order to complete its contractual obligations, Tri–County needed certain equipment to process the sand and gravel from the land it leased. As a result, KMB, Inc. leased equipment to Tri–County for that purpose. The leased equipment was used only at the gravel pit. Once the material was processed, a trucking firm hired by Ladd transported the material to the construction site, some eight to ten miles from the gravel pit.

Although initially the agreement between Tri–County and KMB for the lease of the equipment was oral, that agreement was reduced to writing in June of 1988. In the agreement, Tri–County assigned part of its account with Ladd Construction Company to KMB for the purpose of securing the rental charges which Tri–County owed to KMB. Ladd was notified of the assignment and received bi-weekly notification of the amount due to KMB by Tri–County. KMB did not file a Uniform Commercial Code financing statement regarding the assignment.

Tri–County filed a voluntary petition for bankruptcy under Chapter 11 in October of 1988. At that time, Ladd owed Tri–County $43,413.71 for previously supplied material while Tri–County owed KMB $30,484.

The bankruptcy court found that KMB did not have a security interest in the funds due from Ladd because they had failed to perfect that interest as required under Article 9 of the Uniform Commercial Code. However, the bankruptcy court also found that the Illinois Mechanics Liens Act, Ill. Rev.Stat. ch. 82, ¶ 23(b) permits a lien for the cost of renting equipment used in a public contract; accordingly KMB was found to have a valid mechanics lien for $30,484.

## VALIDITY OF MECHANICS LIEN

Section 23(b) of the Mechanics Liens Act provides in pertinent part:

Any person whose shall furnish ... machinery ... to any contractor having a contract for public improvement ... shall have a lien for the value thereof on the money ... due or to become due the contractor. . . .

This statute in one form or another has been in existence since the early 1900's. Thus, the Illinois courts have had ample time to interpret the statute. In 1916, the Illinois Supreme Court decided *Alexander Lumber Company v. Farmer City*, 272 Ill. 264, 111 N.E. 1012 (1916). In that case, Farmer City entered into a contract with Howes Brothers to construct sewers. A number of Howes' subcontractors sought enforcement of claimed mechanics liens for various work they had done under their contracts. The City argued that no mechanics lien was allowable in favor of subcontractors unless the material furnished by the subcontractors entered into and became a part of the improvement. The Supreme Court rejected that argument. The cases relied on by the parties making that argument had interpreted a different section of the Mechanics Liens Act, the section dealing with private contracts. The Supreme Court stated that construction of § 23 is not governed by construction of other provisions which allow mechanics liens against the owner's real estate. The implication, although not explicit, to be drawn from the *Alexander Lumber* case is that because the lien which results from a private contract attaches to the real property of the owner of the land on which the improvement is being made, there must be some sort of connection between the materials provided and the actual improvement itself. However, because the lien for public contracts does not attach to the land, the connection is not necessary.

The next interpretation of § 23 came in *McMillan v. Casey Co.*, 311 Ill. 584, 143 N.E. 468 (1924). In that case, the subcontractor had sold the contractor machinery, materials and tools necessary to construct roads pursuant to a contract with Vermilion County. The subcontractor claimed mechanics liens for the machinery for materials which they had delivered to the contractor for use in the construction of the roads. The amount of the mechanics liens claimed for machinery was the purchase price. The issue as defined by the Supreme Court was whether the Act gave the subcontractor a lien for the purchase price or whether the lien was limited to "whatever becomes a constituent part of the improvement." The parties before the court argued that under the reasoning of *Alexander*, all that was required for a mechanics lien was that the machinery be furnished to the contractor.

The *McMillan* court disagreed with this extension of the *Alexander* reasoning. The court blanketly held that *Alexander* does not stand for the proposition that a mechanics lien for the purchase price is proper. In addition, the *McMillan* court stated that an analysis of how the machinery was used is not unimportant under § 23 just because of the language of *Alexander Lumber*. Thus, *McMillan* in some respects limited the holding of *Alexander* without overruling it.

The *McMillan* court pointed out that there is a different policy underlying the Act's provisions for public contracts than for those governing private contracts. The court specifically stated that it is against public policy to allow a mechanics lien to attach to property owned by the public and for that reason § 23 limits the lien's attachment to funds owing the contractor. The lien is not intended to provide "security" for or to become an indemnity fund for subcontractors. Rather, the liens were somehow to be related to the value of the contribution of the subcontractor to the public improvement project.

The Supreme Court considered § 23 one last time in *Standard Oil Co. v. Vanderboom*, 326 Ill. 418, 158 N.E. 151 (1927). In that case, Standard Oil had provided gasoline, oil and grease to the subcontractor for operation of machinery owned by the contractor and used to perform under a public contract. At issue was whether the gasoline products were lienable under § 23. The Supreme Court expanded somewhat on its statement in *McMillan* (that the lien must be related somehow to the value of the contribution to the project) when it held

that materials which are used up or injured in the construction project became in a sense a part of the improvement and therefore were lienable. The court noted that some of its language in the *Alexander Lumber* case was perhaps a bit broad but stated there was nothing inconsistent between *McMillan* and *Alexander Lumber*. As a result, materials provided to a contractor which were necessary to enable the contractor to do the work and which were entirely consumed by the contractor even though not physically becoming a part of the improvement were includable under the Mechanics Lien Act.

There have been approximately five appellate court cases which have considered directly or in dictum the meaning of § 23. The first of those cases occurred after *McMillan* but before *Standard Oil* in *New Erie Coal Co. v. McMullen*, 247 Ill.App. 515 (2nd Dist.1928). In that case the subcontractor New Erie Coal leased a crane to the contractor McMullen & Sons for use in construction of a road in Kankakee County. The court in *New Erie Coal* noted that "since sales are not included in [§ 23's] provisions, then to say that the statute does not embrace rentals and the value of the use of machinery would be to wholly nullify its plain provisions and leave it meaningless." *Id.* at 517. Because the statute explicitly covers provision of machinery, the court held that the interpretation argued by the contractor was patently absurd and therefore improper statutory construction. The *New Erie Coal* court thus held that the rental of the crane was lienable under § 23.

The *New Erie Coal* court also noted that as technology progresses the use of machinery frequently supplants human labor which is also clearly lienable under § 23 and which has consistently been held to "enter into" the improvement. Thus, to some extent, the value of the use of the machinery does enter into an improvement.

The other cases, which do not add much to our understanding of § 23, are *Koenig v. McCarthy Construction Company*, 344 Ill.App. 93, 100 N.E.2d 338 (1951); *D.D. Kennedy, Inc. v. Lake Petersburg Associa-tion*, 54 Ill.App.2d 85, 203 N.E.2d 145 (4th Dist.1964); *Arrow Contractors Equipment v. Siegel*, 68 Ill.App.2d 447, 216 N.E.2d 181 (1st Dist.1966); and *CS Lewis, Inc. v. Cabot Corp.*, 85 Ill.App.3d 708, 40 Ill.Dec. 853, 407 N.E.2d 84 (4th Dist.1980). Although there is some discussion in those cases about whether *New Erie Coal* was correctly decided or not, this Court holds as did the bankruptcy court, that *New Erie Coal* is not inconsistent with *McMillan* and that *McMillan* did not overrule *Alexander Lumber*. Rather, when the question presented is whether the rental of machinery is or is not lienable, the Court must perform a rather fact specific analysis under *Alexander Lumber, McMillan,* and *Standard Oil,* to determine whether and to what extent the furnishing of equipment or machinery is lienable.

In the case before the Court, the lien is only asserted for the value of the use of the equipment. It is not asserted for the purchase price of the equipment or for the repair of the equipment or anything unrelated to the construction project itself. Rather, the value of the use of the equipment to the public contract as measured by the rental price agreed upon in the subcontract has "entered into" this public improvement. As held by the bankruptcy court, the mechanics lien of KMB is enforceable and the bankruptcy court's holding is therefore affirmed.

## PERFECTION OF SECURITY INTEREST

Tri–County owed KMB $30,484 at the time of filing bankruptcy. KMB claims that, because Tri–County assigned its right to receive payments from Ladd to the extent that it owed money to KMB, it had a security interest in the money owed to Tri–County.

Ill.Rev.Stat. ch. 26, § 9–302 provides as follows:

(1) a financing statement must be filed to perfect all security interests except the following: ... (e) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part

of the outstanding accounts of the assignor.

KMB takes the position that it is entitled to rely on § 9–302(1)(e) because it is not regularly engaged in accounts receivable financing, thus making this a casual and isolated transaction, and because the amount which Tri–County owed to KMB, when compared to the $250,000 which Tri–County was entitled to receive from Ladd was a mere 12%, thus making it an insignificant transfer. Appellant argues that because KMB fails to meet either test it did not have a perfected security interest in the Ladd account.

■ The burden of proving the applicability of § 9–302(1)(e) rests on the party asserting the exception. *See, Consolidated Film Industries v. United States*, 547 F.2d 533 (10th Cir.1977). Although the Code does not define "significant part," case law has developed two tests.

■ The first test is referred to as the percentage test. This test focuses on the size of the assignment in relation to the size of outstanding accounts. *In re B. Hollis Knight Co.*, 605 F.2d 397 (8th Cir. 1979); *Standard Lumber Company v. Chamber Frames, Inc.*, 317 F.Supp. 837 (E.D.Ark.1970).

The second test is the "casual or isolated" test. This test is suggested by the language of Comment 5 to UCC § 9–302 which states that:

> The purpose of the subsection (e)(1) exemptions is to save from ex post facto invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statute many assignments which no one would think of filing may be subject to invalidation. The subsection (1)(e) exemptions go to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file.

The totality of circumstances surrounding the transaction determines whether an assignment was casual or isolated. If the transaction was not part of a regular course of commercial financing then under this test filing is not required. The rationale appears to be the reasonableness of requiring a secured creditor to file if assignment of debtor's accounts is a regular part of business and the corresponding unreasonableness of a filing requirement for casual or isolated transactions.

There is no authoritative determination of whether both tests must be met in order to claim the exemption or whether either by itself is sufficient. The bankruptcy court agreed with the *Hollis Knight* court which held that both tests must be met. This Court agrees with that assessment. The statutory language specifically requires that the assignment be an insignificant part of the outstanding account. Thus, at the very least, this test must be met in every instance. A showing of a casual or isolated assignment of a significant part of outstanding accounts would not be entitled to the exemption given this clear statutory requirement. On the other hand, given the comments to the UCC regarding the purpose of this exemption, in a case involving the transfer of an insignificant part of outstanding accounts to a creditor whose regular business is financing, such accounts should not fall within this exemption. Thus it is a logical result of the language and purpose of this section to require that both tests be met.

Under the UCC, an account is "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Ill.Rev.Stat. ch. 26, § 9–106.

■ The Debtor's bankruptcy schedules indicate that Tri–County had ten accounts at the time of the Chapter 11 filing, of which the largest by far was the Ladd contract for $250,000. The assignment to KMB permitted KMB to:

> request that the Ladd Construction Company ... make any and all payments to [Tri–County] by including on said check payment the name of [KMB] who shall have said check negotiated and endorsed by [Tri–County] and said check shall be

deposited in [KMB's] account with [Tri–County's] endorsement, at which time [KMB] shall issue a check to [Tri–County] for the difference between the amount of the check issued and the rental payment owed to [KMB]."

Equipment Rental Agreement p. 5.

It is thus clear that the assignment was not of the entire Ladd account but only of that portion of the account necessary to cover the balance due to KMB. At the time the parties entered into the Agreement, the total rental amount was estimated at $30,000; the actual figure turned out to be $30,484. The ratio of the amount assigned to the total account, even assuming that the Ladd contract was the *only* account, is approximately 12%.

Although there is no bright line marking the division between significant and insignificant, the 12% figure is surely on the "insignificant" side. *See, Standard Lumber Co. v. Chamber Frames, Inc.,* 317 F.Supp. 837 (D.C.Ark.1970) (16% insignificant). Thus, the first test, contrary to what the bankruptcy court found, has been satisfied. The bankruptcy court based its finding on the assumption that Tri–County had assigned the entire Ladd account to KMB, an assumption that is not supported by the record.

The record also shows without contradiction that KMB was not in the business of accepting contract assignments, nor had either party to the assignment engaged in such a transaction at other times. The bankruptcy court found that despite the "isolated" nature of this assignment, it was "a classic secured transaction," Op. p. 9, and thus failed to fall within the "casual and isolated" exception to the filing requirement.

This Court agrees with that assessment. This is not the type of "casual" transaction in which reasonable parties would fail to see the importance of filing. Rather, it was evidenced by a formal, written agreement between two corporations; notice of the agreement was sent to Ladd, and other conduct engaged in by KMB indicates the degree of formality attached to it. This is the type of transaction for which the UCC requires filing in order to perfect.

Because KMB failed to perfect its security interest, this Court affirms the bankruptcy court's ruling.

### CONCLUSION

As stated above, this Court AFFIRMS the bankruptcy court in its finding that KMB is entitled to a mechanics lien and in finding that KMB did not have a perfected security interest in the Ladd account.