(No. 81-CC-0489— )

K.S.M. SHEET METAL Co., a corporation, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 14, 1986.*

*Order on objection to petition for rehearing filed April 6, 1987.*

PESSIN, BAIRD & WELLS (STUART I. PESSIN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant K.S.M. Sheet Metal Co. brings this action to enforce a mechanic's lien claim on a public improvement for the State of Illinois under section 23 of the Mechanic's Liens Act (the Act). (Ill. Rev. Stat. 1977, ch. 82, par. 23.) Claimant was a sub-subcontractor of F.E. Holmes and Son Construction Co., the general contractor on a project funded by the Illinois Capitol Development Board (CDB). The project involved the construction of a public improvement in Sesser, Illinois. Holmes subcontracted a portion of the project to Illinois Erectors, Inc., which in turn subcontracted roofing work to Claimant. The undisputed amount of the claim is $8,345.45.

In 1978, after Claimant had completed its subcontracting work and because Illinois Erectors had failed to pay Claimant, Claimant filed suit in the circuit court of St. Clair County, Illinois, against Illinois Erectors, Inc. to collect on its contract sum. While this suit was pending, Claimant discovered that CDB was still holding funds due to Holmes. Therefore, on May 8, 1979, Claimant filed with CDB a sworn statement of its claim for lien under section 23 of the Act. Sometime in June 1979, Claimant's attorney telephoned the office of the project manager for CDB, Thomas McCue, to attempt to ascertain the status of the funds being held by CDB on the project.

Claimant's attorney testified that McCue advised him that the funds had been paid out in full about one week previously. As a result of that information and having then concluded that further pursuit of the claim for lien against the State was impossible, Claimant's counsel did not file a suit for accounting against the contractor having the contract with the State (Holmes)

and the contractor to whom Claimant furnished its material and labor (Illinois Erectors). No copy of any complaint including the complaint already pending in the circuit court of St. Clair County, was ever served upon CDB. Holmes was not made a party to the circuit court action until April 3, 1980.

McCue testified that, while he does not specifically recall his telephone conversation with Claimant's counsel, it was his responsibility to only approve vouchers and forward them to the CDB accounting department. It was his practice that, if an inquiry regarding payment was made, he would contact the accounting department to determine whether the voucher had been paid. Evidence from CDB accounting department records disclosed that on June 22, 1979, McCue approved a voucher for payment to Holmes of $44,011.44, which represented the retainage on the Sesser project and which was the final balance due to Holmes. After the voucher reached the CDB accounting department, that department reviewed the voucher against any outstanding lien claims, found the claim filed by Claimant on May 8, 1979, and amended the voucher to provide a payment of $35,665.99 to Holmes and a withholding of $8,345.45, the amount of Claimant's lien statement. This balance was then held by CDB pending receipt of a certified copy of the complaint for accounting on the lien claim amount. On August 28, 1979, because such complaint had not been received by CDB, a new voucher for $8,345.45 was approved; and on September 12, 1979, that amount was paid by the State to Holmes.

Claimant's suit was filed in this Court on September 10, 1980. Claimant seeks recovery on the ground that McCue's alleged misrepresentation that all funds had

been paid by CDB in June 1979, notwithstanding the proper filing with CDB of the statement of claim for lien on May 8, 1979, excused Claimant from filing the suit for accounting and serving a certified copy of the complaint upon CDB within the time required by section 23 of the Act.

At the time Claimant's right to claim a lien arose, section 23 of the Act provided that Claimant, as a subcontractor to Holmes:

". . . may have a lien on the money, bonds or warrants due or about to become due the contractor having a contract with the State under the contract, by filing with the Director, whose duty it is to let such contract, a sworn statement of the claim showing with particularity the several items and the amount claimed to be due on each; but such lien shall attach to only that portion of the money, bonds or warrants against which no voucher has been issued and delivered by the State.

The persons so claiming a lien shall, within sixty (60) days after filing such notice, commence proceedings by complaint for an accounting, making the contractor having a contract with the State and the contractor to whom (claimant was subcontracted), parties defendant, and shall, within the same period notify the Director of the commencement of such suit by delivering to him a certified copy of the complaint filed. . . . It shall be the duty of the Director, after the sworn statement has been filed with him, to withhold payment of a sum sufficient to pay the amount of such claim, for the period limited for the filing of suit, unless otherwise notified by the person claiming the lien.

Upon the expiration of this period the money, bonds or warrants so withheld shall be released for payment to the contractor unless the person claiming the lien shall have instituted proceedings and served the Director with the certified copy of the complaint as herein provided, in which case, the amount claimed shall be withheld until the final adjudication of the suit is had. . . .

Any officer of the State . . . violating the duty hereby imposed upon him shall be liable on his official bond to the claimant serving such notice for the damages resulting from such violation, which may be recovered in a civil section. . . ." Ill. Rev. Stat. 1977, ch. 82, par. 23.

It is not disputed that CDB, upon receipt of Claimant's notice of claim for lien, withheld from Holmes "a sum sufficient to pay the amount of such claim for the period limited for the filing of suit." The claim was served upon CDB on May 8, 1979. The Act

required that CDB therefore hold the sum ($8,345.45) for 60 days, or until at least July 7, 1979. In fact, CDB held the sum until August 28, 1979, since the practice by the CDB accounting department at that time was to withhold any sum claimed due by notice of lien for at least 90 days to allow for adequate notice of the required suit for accounting. No suit for accounting was filed by Claimant during the time required. Claimant argues that, because McCue told Claimant's attorney in June 1979 that all funds had been paid, the State is estopped from raising as a defense the failure of Claimant to perfect its lien by filing suit and serving a certified copy on CDB within the 60-day statutory period. This argument must fail.

While Claimant's attorney was uncertain as to the exact date in June 1979 he spoke with McCue, it is clear that it was at least three weeks after the service of the notice of Claimant's lien, which occurred on May 8, 1979. Therefore, when Claimant's attorney was told at that time in June that CDB had disbursed all the Sesser project funds in full about one week before the phone call (if such had been true), Claimant still had a remedy available under the statute—namely, suit against the appropriate State officer on his official bond—because such disbursement would have occurred within 60 days after the service of notice. However, Claimant's duty at that time in order to perfect its lien and then to avail itself of its statutory remedy, was to file its suit for accounting and serve a certified copy of its complaint, all in a timely manner. Failure to do so not only eliminated the remedy on the official's bond which it could have pursued under the facts it mistakenly believed existed (see *Wilbur Waggoner Equipment Rental & Excavating Co. v. Johnson* (1975), 33 Ill. App. 3d 358, 342 N.E.2d 266), but also ironically eliminated

the lien against the public funds still actually being held by CDB, as the lien becomes void if the accounting suit is not filed and served within the statutory time.

The Act is to be strictly construed, and the failure of Claimant to abide by its provisions results in the loss of any rights to a lien and of all remedies under the Act. (*D.D. Kennedy, Inc. v. Lake Petersburg Association* (1964), 54 Ill. App. 2d 85, 203 N.E.2d 145.) The Court finds that it was the failure of Claimant to file its suit for accounting and thereby preserve its lien, and not any action by the Respondent, which caused Claimant's lien rights in the Sesser project funds to be lost.

Based on the foregoing, it is hereby ordered that this claim be and hereby is denied.

## ORDER ON OBJECTION TO PETITION FOR REHEARING

POCH, J.

This cause coming on to be heard upon the Respondent's Objection to Claimant's Petition for Rehearing and the Court being fully advised in the premises finds this petition to be denied.